892 F.2d 212
 51 Fair Empl.Prac.Cas. (BNA) 1077,
52 Empl. Prac. Dec. P 39,534, 58 USLW 2430,
1 A.D. Cases 1549
 Timothy J. DALEY, Plaintiff-Appellant,
v.
Edward I. KOCH, Mayor of the City of New York, Benjamin
Ward, Police Commissioner, City of New York, Judith Levitt,
Personnel Director, City of New York, New York City Civil
Service Commission, Defendants-Appellees.
 No. 111, Docket 89-7272.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 3, 1989.
Decided Dec. 20, 1989.
 
 John P. Rudden, New York City, for plaintiff-appellant.
 Phyllis Arnold, Asst. Corp. Counsel (Peter L. Zimroth, Corp. Counsel, David L. Lock, and Elizabeth Dvorkin, Asst. Corp. Counsels, New York City, of counsel), for defendants-appellees.
 Before MINER and MAHONEY, Circuit Judges, and CARMAN, Judge.*
 CARMAN, Judge:
 Appellant, an unsuccessful candidate for appointment to the New York City Police Department (hereinafter Police Department) appeals from so much of a summary judgment of the United States District Court for the Southern District of New York (Knapp, J.) as dismissed his claim under the Rehabilitation Act of 1973, 29 U.S.C. § 701-796i as well as pendent state claims.
 
 BACKGROUND
 
 1
 Appellant passed the December 1984 New York City Civil Service Examination and his name was certified to the Police Department on a list of candidates deemed eligible for appointment. On February 20, 1986 appellant reported to the Psychological Services Division of the Police Department to complete the written segment of his psychological profile, which included the California Psychological Inventory, the Minnesota Multiphasic Personality Inventory and a Police Candidate Questionnaire. Appellant answered affirmatively to Question Number 65 of the Police Candidate Questionnaire, indicating he had held more than three jobs in the past two years.
 
 
 2
 On March 30, 1986 appellant returned to the Psychological Services Division for a screening interview with Dr. Ernest Adams. Appellant told Dr. Adams that he had never been referred to or sought help from a psychologist, psychiatrist or social worker. Appellant also informed the doctor that, since 1983, he had held four different jobs and had four periods of unemployment. Appellant said he worked from January to April 1983 as a valet, but left because there was no room for advancement. He said he worked in a jewelry business from July of 1984 to January of 1985, but was fired on the ground of being unproductive after an unexplained absence of three days. Appellant recounted that he worked from March to July of 1985 at a store that sold police equipment, including firearms, but left because he objected to the policy of prohibiting salespeople from entering the storage area where the guns were kept. Dr. Adams noted that appellant said he resented this rule because he felt it was an obstacle to doing his job properly and that appellant objected to the rule because he considered himself to be an honest person. Appellant did not work again until November of 1985 when he was employed on a part-time basis as an independent consultant to a business called the Guardian Group. Appellant also told Dr. Adams that he had enlisted in the United States Marine Corps in June of 1982 and was part of a Marines reserve unit.
 
 
 3
 On the basis of appellant's test results and interview, Dr. Adams concluded that appellant showed "poor judgment, irresponsible behavior and poor impulse control" which rendered plaintiff "unsuitable to be a police officer." Plaintiff was not diagnosed as having any particular psychological disease or disorder.
 
 
 4
 In a subsequent review of appellant's file and Dr. Adams' report, the Coordinator of the Psychological Services Testing Program agreed with the doctor that appellant had "significant personality traits" that would prevent him from effectively functioning as a police officer. An independent psychiatric consultant also reviewed appellant's file and sustained the finding that appellant was unsuited for police work.
 
 
 5
 After appellant learned of his disqualification in October of 1986, he appealed to the New York City Civil Service Commission. In support of his appeal, he submitted a report dated December 12, 1986 compiled by Dr. A.J. Quatrano, a psychologist. The report stated that appellant was then employed as an assistant safety inspector at a trucking company, was attending John Jay College, had continued in the Marine Corps Reserves and had no record of undergoing psychological treatment. After interviewing appellant and reviewing his test results, Dr. Quatrano concluded that appellant demonstrated no "undue anxiety, thought disorder or underlying psychosis." The appeal was denied by the Civil Service Commission in January of 1988.
 
 
 6
 Appellant then brought an action in the Southern District of New York asserting federal claims under the Rehabilitation Act of 1973 and the Civil Rights Act, 42 U.S.C. § 1983, as well as pendent state claims under New York Executive Law § 296, Administrative Code of the City of New York § 8-101, New York Military Law §§ 242, 243 and the New York Civil Service Law. Appellees moved for summary judgment and appellant cross-moved for summary judgment. Appellees were granted summary judgment on the Rehabilitation Act claim, the Civil Rights Act claim was dismissed for failure to state a claim and the state law claims were dismissed since there was no longer a basis for pendent jurisdiction once the federal claims had been rejected. Appellant has chosen to pursue only his claim under the Rehabilitation Act in this appeal, although he has requested this Court to exercise its discretion to reinstate the pendent state claims should the Court find in his favor.
 
 DISCUSSION
 
 7
 Section 504 of the Rehabilitation Act prohibits a state program receiving federal funding from discriminating against a handicapped person solely by reason of that person's handicap.[1] School Bd. of Nassau County v. Arline, 480 U.S. 273, 275, 107 S.Ct. 1123, 1125, 94 L.Ed.2d 307 (1987). In order to succeed in his claim, appellant must come under the definition of an "individual with handicaps" as outlined in the Rehabilitation Act. A handicapped person is defined as one who:
 
 
 8
 (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.
 
 29 U.S.C. § 706(8)(B) (Supp. V 1987).[2]
 
 9
 Both parties agree that appellant has neither a physical nor mental impairment which substantially limits one or more of his life activities nor does he have a record of such an impairment. Appellant does contend, however, that the Police Department regards him as having such an impairment, and that this impairment substantially limits him from the major life activity of being a police officer, thus qualifying him as a handicapped person entitled to relief under the Act. Appellees contend that the Police Department does not regard appellant as having any impairment and that he does not have an impairment within the meaning of the Act and its implementing regulations.
 
 
 10
 Very few cases spend much time on the question of who is a handicapped person since this issue usually requires little analysis. Tudyman v. United Airlines, 608 F.Supp. 739, 744 (C.D.Cal.1984). The Department of Health and Human Services regulations are particularly significant in identifying handicapped individuals who qualify for relief under the Act because the regulations were drafted with Congressional oversight and approval. Arline, 480 U.S. at 279, 107 S.Ct. at 1126 (citing Consolidated Rail Corp. v. Darrone, 465 U.S. 624, 634-35, and nn. 14-16, 104 S.Ct. 1248, 1254-55, and nn. 14-16, 79 L.Ed.2d 568 (1984)). A review of the regulations shows that mental impairment is defined as "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 45 C.F.R. § 84.3(j)(2)(i)(B) (1988).
 
 
 11
 Appellant argues that due to the misperception concerning his personality traits he cannot work as a New York City police officer and therefore he is substantially limited in a major life activity--working in the Police Department. Major life activity has been defined by the regulations as, inter alia, "working." 45 CFR § 84.3(j)(2)(ii). However, the regulations cannot be interpreted to extend this definition to include working at the specific job of one's choice. Tudyman, 608 F.Supp. at 745. The position of New York City police officer demands unique qualifications that appellant has failed to meet. Being declared unsuitable for the particular position of police officer is not a substantial limitation of a major life activity. See Forrisi v. Bowen, 794 F.2d 931, 934-35 (4th Cir.1986) (Several courts have decided "unanimously that an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job."). As the district court noted in Tudyman, "[f]or the same reason that the failure to qualify for a single job does not constitute a limitation on a major life activity, refusal to hire someone for a single job does not in and of itself constitute perceiving the [person] as a handicapped individual." Tudyman, 608 F.Supp. at 746.
 
 
 12
 In Forrisi, the Court of Appeals for the Fourth Circuit noted that the Rehabilitation Act was intended to protect the disabled from discrimination in employment and stated that:
 
 
 13
 [i]t would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.
 
 
 14
 794 F.2d at 934 (citation omitted). Appellant's personality traits could be described as commonplace; they in no way rise to the level of an impairment.
 
 
 15
 This Court holds that "poor judgment, irresponsible behavior and poor impulse control" do not amount to a mental condition that Congress intended to be considered an impairment which substantially limits a major life activity and therefore a person having those traits or perceived as having those traits cannot be considered a handicapped person within the meaning of the Act. If appellant had been perceived by the Police Department to be suffering from an impairment which substantially limits a major life activity, whether or not in reality he had no impairment, then he might qualify for relief under the Rehabilitation Act. However, it is clear from the facts that the Police Department never considered appellant to be suffering from an impairment which substantially limits a major life activity and did not diagnose appellant as having any disorder. Appellant was screened for the job of police officer and found to hold personality traits that made him unsuitable for the position. Appellant does not qualify as a handicapped person under the Act simply because he was rejected for employment by the Police Department.
 
 CONCLUSION
 
 16
 For the above-stated reasons, the judgment of the district court is affirmed.
 
 
 
 *
 Honorable Gregory W. Carman, Judge, United States Court of International Trade, sitting by designation
 
 
 [1]
 Section 504 of the Rehabilitation Act reads in pertinent part:
 No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
 29 U.S.C. § 794(a) (Supp. V 1987), amended by Pub.L. No. 100-259, 102 Stat 28, 29 and Pub.L. No. 100-630, 102 Stat. 3289, 3312 (1988).
 
 
 [2]
 Before the Rehabilitation Act was amended in 1986, this definition appeared at § 706(7)(B)