Joseph W. GARDINER, Plaintiff,

v.

MERCYHURST COLLEGE, Rodger J. Gregorich, Helen F. Mullen, Sheri Lantz, Larry Kopko, Defendants.

Civil Action No. 95–15E.

United States District Court, W.D. Pennsylvania.

Dec. 8, 1995.

Joseph W. Gardiner, Erie, PA, Pro Se.

Marcia H. Haller, MacDonald, Illig, Jones & Britton, Erie, PA, for Mercyhurst College, and Rodger J. Gregorich.

C. Peter Hitson, Pietragallo, Bosick & Gordon, Pittsburgh, PA, P. Brennan Hart, Marshall, Dennehey, Warner, Coleman & Goggin, Pittsburgh, PA, for Sheri Lantz.

John W. Beatty, Knox, McLaughlin, Gornall & Sennett, Erie, PA, for Larry Kopko.

## OPINION

COHILL, District Judge.

Plaintiff, Joseph W. Gardiner, brought this action against Mercyhurst College, Rodger J. Gregorich ("Gregorich"), Helen F. Mullen ("Mullen"), Sheri Lantz ("Lantz"), and Larry Kopko ("Kopko"). Mercyhurst College is a non-profit corporation located in Erie, Pennsylvania. Gregorich, Mullen, and Lantz are adult individuals residing in Erie County, Pennsylvania. Kopko is an adult individual residing in Warren County, Pennsylvania.

Pending before this court are motions by Lantz to dismiss and Kopko for summary judgment. As we are awaiting a response from plaintiff to Kopko's motion for summary judgment, we presently address only Lantz' motion to dismiss.

## I. Background

The following facts have been averred in plaintiff's Amended Complaint. Mercyhurst College operates a private undergraduate and post-graduate college. It operates the Mercyhurst McAuley Division Municipal Police Act 120 Training Program ("Act 120 Program") pursuant to 53 Pa.Con.Stat. §§ 740 et seq. (1995) ("Act 120"). Act 120 allows colleges and universities to be certified to operate municipal police training educational facilities, and Mercyhurst College was operating a campus police department and training program pursuant to this act at all relevant times.

In March of 1994 the plaintiff submitted an application for admission to Mercyhurst College's Act 120 Program. In April of 1994 plaintiff was notified that he had been accepted into the Act 120 Program subject to acceptable findings with respect to the following criteria: (1) physical examination, (2) Minnesota Multiphasic Personality Inventory–2 ("MMPI") and psychological review, and (3) criminal record check. On May 5, 1994 plaintiff met with Lantz, a psychologist, who administered the MMPI. On May 13, 1994 plaintiff received a letter from Gregorich, Director of Mercyhurst College's Public

Safety Programs, informing him that he had been accepted into the Act 120 Program. Plaintiff began taking Act 120 classes on May 23, 1994.

Prior to applying for admission into Mercyhurst College's Act 120 Program plaintiff had been hospitalized four times for psychiatric treatment, the most recent instance being in 1992. Prior to this hospitalization plaintiff had been reviewed for a possible psychiatric disability in 1989 and 1991. Plaintiff does not state by whom this review was performed. As a result of these treatments it was determined that plaintiff did not suffer from a major Axis I psychiatric impairment, but was suffering from problems more closely associated with immaturity and emotional stress.

On May 25, 1994 the plaintiff met with Lantz to review the results of his MMPI. Although the results were not unfavorable, Lantz informed plaintiff that the test was invalid due to plaintiff's undisclosed prior psychological problems, and that another MMPI would need to be performed. Lantz had contacted former neighbors to learn about these problems and subsequently relayed this information to Gregorich.

A meeting between Gregorich and plaintiff was held on May 26, 1994. At this time Gregorich questioned plaintiff regarding his prior psychological problems. Plaintiff did not want to respond to Gregorich's inquiries; however, Gregorich threatened plaintiff with expulsion from the Act 120 Program in such a manner that plaintiff feared for his bodily safety. Thus, plaintiff told Gregorich that he had been treated in the past for psychological problems, but was now stable. Gregorich also demanded that plaintiff sign a release allowing Gregorich to obtain plaintiff's medical records relating to his prior psychological treatment. Plaintiff initially refused; however, Gregorich again threatened plaintiff with expulsion from the Act 120 Program. Plaintiff, fearing for both his bodily safety and his status in the Act 120 Program, consented to a check of his medical records.

Gregorich also informed plaintiff that he was going to contact Kopko, the Sheriff of Warren County, Pennsylvania, to obtain information regarding plaintiff's past psycho-

logical problems. Previously Gregorich had run a record check with the Pennsylvania State Police and found that plaintiff did not have a criminal record.

On May 27, 1994 plaintiff met with Gregorich to submit the name of a licensed psychologist who would administer the second MMPI. Gregorich rejected plaintiff's psychologist as being biased. When plaintiff insisted on being able to use the psychologist of his choice, Gregorich grabbed and shoved plaintiff and again threatened plaintiff with expulsion from the Act 120 Program. Resultingly, the plaintiff obtained a different psychologist, Charles H. Steinmeyer, to perform the MMPI, which the plaintiff underwent on June 4, 1994.

On June 7, 1994, prior to receiving the written results of the second MMPI, Gregorich informed plaintiff that he was no longer a part of the Act 120 Program because Gregorich felt plaintiff constituted a risk. Gregorich also informed plaintiff his decision was, in part, based on the second MMPI. Plaintiff requested the opportunity to review the results of the second MMPI, but this request was refused.

Pursuant to Mercyhurst College policies, plaintiff filed a grievance with Mullen, the Dean of the McAuley Division. The appeal hearing was originally scheduled for June 13, 1994; however, it was rescheduled for June 17, 1994. In the interim, and without allowing plaintiff to present his appeal, Mullen issued a written opinion dated June 13, 1994, upholding Gregorich's decision to terminate plaintiff's association with the Act 120 Program.

All of the above facts have been averred in the Amended Complaint.

In January of 1995 the plaintiff had filed a complaint *pro se.* The Honorable Sean J. McLaughlin ordered the plaintiff to file a more specific pleading. In May of 1995 plaintiff, through an attorney, filed an amended complaint containing twelve counts of both federal and state claims. Plaintiff's attorney has subsequently withdrawn, and plaintiff is again *pro se.*

This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

## II. Discussion

Lantz has moved to dismiss the complaint against her. Plaintiff has set forth three causes of action against her: conspiracy to violate civil rights, defamation, and conspiracy to defame, counts VI, X, and XII respectively.

### A. Conspiracy to Violate Civil Rights

Initially, Lantz addresses count VI, conspiracy to violate civil rights. In count VI plaintiff asserts that rights afforded by (1) the Fourteenth Amendment to the United States Constitution, (2) the Rehabilitation Act of 1973, and (3) Title III of the Americans with Disabilities Act ("ADA") have been denied. Plaintiff is claiming that he was denied protection under the law because of his status as a person who is handicapped. Amended Complaint at ¶¶ 97–99. Lantz notes that Conspiracy to Violate Civil Rights is a cause of action grounded in the Civil Rights Act of 1871, 42 U.S.C. § 1985(3). She argues that handicapped individuals are not a class that is protected by § 1985(3), and as such, plaintiff cannot sue Lantz pursuant to this section. Lantz also argues that plaintiff is not handicapped or disabled within the meaning of the ADA or the Rehabilitation Act, and that as such, Count VI should be dismissed. We address this issue first.

A handicapped individual is defined by the Rehabilitation Act as one who (i) has a physical or mental impairment which substantially limits one or more of such person's *major life activities,* (ii) has a record of such impairment, or (iii) is regarded as having such an impairment. 29 U.S.C. § 706(8)(B) (emphasis added). The definition of a disabled individual in the ADA is identical to the one found in the Rehabilitation Act. 42 U.S.C. § 12102(2). Courts have interpreted this definition to mean that a two-pronged test must be undertaken to determine whether an individual is handicapped. Initially, it must be determined that an individual has, or had, a physical or mental impairment. If so, it must then be determined whether the "impairment substantially limits [or limited] one

or more of that person's major life activities." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

Plaintiff contends that he is handicapped because he has a record of mental impairment. Amended Complaint at ¶ 63. In support of his assertion, he alleges the following facts. He was hospitalized four times for psychiatric treatment, the most recent instance being in 1992. Prior to this hospitalization plaintiff had been reviewed for a possible psychiatric disability in 1989 and 1991. Plaintiff does not state by whom this review was performed. As a result of these treatments it was determined that plaintiff did not suffer from a major Axis I psychiatric impairment, but was suffering from problems more closely associated with immaturity and emotional stress. *Id.* at ¶¶ 55–57. He goes on to allege that during his previous psychiatric treatment he had been treated as an individual who was substantially limited in his major life's activities. *Id.* at ¶ 63.

▆ Because the motion before us is a motion to dismiss made pursuant to Fed. R.Civ.P. 12(b)(6), this Court must accept plaintiff's version of the facts as true. However, we need not accept plaintiff's *characterization* of the facts. *Fisher Bros. Sales, Inc. v. United States,* 46 F.3d 279, 286 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 49, 133 L.Ed.2d 15 (1995). Indeed, we are bound by the factual allegations in the complaint, but not its legal conclusions. *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). Plaintiff's assertion that his past psychiatric treatment constituted treatment for an individual who was limited in major life activities is just such a legal conclusion, and as such we are not bound by it.

▆ Separate regulations promulgated by the Department of Health and Human Services and the Equal Opportunity Commission use the same language in defining "major life activities" to mean "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. § 84.3(j)(2)(ii); 29 C.F.R. § 1613.702(c).

Plaintiff has not asserted a factual basis which could lead to the determination that he was substantially limited in any of these major life activities. As such, based on the Amended Complaint, we hold that plaintiff is not handicapped pursuant to the Rehabilitation Act or the ADA.

Relevant case law is in accord with such a holding. *Daley v. Koch,* 892 F.2d 212 (2d Cir.1989). In *Daley,* plaintiff unsuccessfully sought appointment to the New York City Police Department. As part of the employment screening process, plaintiff interviewed with a psychologist, Dr. Adams. Adams diagnosed plaintiff as having poor judgment, irresponsible behavior, and poor impulse control. In Adams' opinion these behavioral traits rendered plaintiff unsuitable for police work, notwithstanding the fact that plaintiff was not diagnosed as having any particular psychological disease or disorder. *Id.* at 214.

Plaintiff sued pursuant to the Rehabilitation Act, alleging that he was denied employment due to his mental impairment. In determining whether plaintiff was to be considered handicapped pursuant to the act, the court relied on the regulations promulgated by the Department of Health and Human Services cited above. The court noted that plaintiff's argument was that his mental impairment prevented him from working as a policeman. While acknowledging that "working" was part of the definition of "major life" activities, the court stated that,

> the regulations cannot be interpreted to extend this definition to include working at a specific job of one's choice. The position of [a] police officer demands unique qualifications that appellant has failed to meet. Being declared unsuitable for the particular position of police officer is not a substantial limitation of a major life activity.

*Id.* at 215 (citations omitted).

We agree, and note that *Daley* is similar to the instant case in that plaintiff has been diagnosed as having reacted with "immaturity" to "emotional stress." This may or may not make him unsuitable for police work, but it does not make him handicapped pursuant to the Rehabilitation Act or the ADA.

We note that plaintiff has asserted violations of the Fourteenth Amendment to the United States Constitution, to the Rehabilitation Act, and the ADA; however, Lantz has argued only to dismiss pursuant to the Rehabilitation Act and the ADA. Therefore, we dismiss Count VI against defendant Lantz only to the extent that they are based on these acts. The count remains to the extent it is based on the Fourteenth Amendment.

Since we have determined that plaintiff is not "handicapped" for purposes of the Rehabilitation Act or the ADA, we need not address the question of whether or not § 1985(3) protects handicapped individuals as a class. The United States Court of Appeals for The Third Circuit has not addressed this issue, *W.B. v. Matula*, 67 F.3d 484, 503 n. 15 (3d Cir.1995), and four other Circuit Courts are evenly divided on the question. *See D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474 (7th Cir.1985) (holding handicapped individuals *are not* within § 1985(3)'s realm); *Wilhelm v. Continental Title Co.*, 720 F.2d 1173 (10th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984) (holding handicapped individuals *are not* within § 1985(3)'s realm); *Larson by Larson v. Miller*, 55 F.3d 1343 (8th Cir.), *vacated and reh'g en banc granted*, 67 F.3d 148 (8th Cir.1995) (holding handicapped individuals *are* within § 1985(3)'s realm); *People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34 (2d Cir.1982), *vacated in part on other grounds*, 718 F.2d 22 (2d Cir.1983) (holding handicapped individuals *are* within § 1985(3)'s realm).

### B. State Claims

■ Lantz also argues that the state law claims of defamation and conspiracy to defame, asserted against her in Counts X and XII, should be dismissed. Plaintiff alleges that Lantz defamed him when she related to Gregorich allegedly false information that she obtained from plaintiff's neighbors. Lantz asserts the defenses of truth and privilege. However, Lantz does not cite any legal authority for these defenses. It is enough for us to note that plaintiff asserts that the information related by Lantz to Gregorich was false. It is well-established that when considering a motion to dismiss, the Court must accept all the facts alleged in the complaint as true and consider them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). As such, Lantz' defense of truth fails in this context.

■ Lantz also asserts that she has a qualified privilege to relay information to Gregorich, and she further asserts that plaintiff has not averred an abuse of this privilege. She provides neither the authority for, nor the scope of, her qualified privilege. It is in plaintiff's brief, not Lantz', that this Court learns that a release was signed, presumably by plaintiff. The scope of this release is unclear, as nothing in the record exists which would allow us to evaluate it. Because we have no way of knowing the scope of the privilege, or even which privilege, Lantz is referring to, we hold that any alleged defamatory statements were not privileged. We note that our holding is based only on the record before us, and should that change, we will reconsider this holding.

Because we are not dismissing the count of defamation against Lantz, we need not address her assertion that the count of conspiracy to defame should be dismissed due to the failure of the defamation count. Finally, because we have not dismissed Count VI against Lantz in its entirety, we do not need to address her assertion that we lack supplemental jurisdiction over the state claims.

An appropriate Order follows.

### ORDER

AND NOW, to wit, this 8th day of December, 1995, it hereby ORDERED, ADJUDGED AND DECREED that:

(1) The defendant Lantz' Motion to Dismiss (Doc. 34) is granted with respect to Count VI only to the extent Count VI is based on the Rehabilitation Act and the Americans with Disabilities Act.

(2) The defendant Lantz' Motion to Dismiss (Doc. 34) is denied with respect to Count VI to the extent Count VI is based on the Fourteenth Amendment of the United States Constitution.

(3) The defendant Lantz' Motion to Dismiss (Doc. 34) is denied with respect to Counts X and XII.