**Edward JOYCE, Plaintiff,**

v.

**SUFFOLK COUNTY, Suffolk County Civil Service Department, Suffolk County Department of Health Services and Suffolk County Police Department, Defendants.**

No. CV 93–3795.

United States District Court,
E.D. New York.

Jan. 16, 1996.

Gaba & Stober, Mineola, NY by Richard M. Gaba, for Plaintiff.

Robert J. Cimino, Suffolk County Attorney, Hauppauge, NY by Jeltje deJong, Assistant County Attorney, for Defendants.

*Memorandum Decision and Order*

SPATT, District Judge.

This action was commenced by the plaintiff Edward Joyce (the "plaintiff" or "Joyce") on

August 20, 1993, seeking remedies for disability-based employment discrimination under 29 U.S.C. § 701 *et seq.* (the Rehabilitation Act); 42 U.S.C. § 1983; 42 U.S.C. § 12101 *et seq.* (the Americans With Disabilities Act or the "ADA"); and the N.Y.Exec. Law §§ 291, 292, 296 (the New York State Human Rights Law). The defendants Suffolk County, Suffolk County Civil Service Department, Suffolk County Department of Health Services and Suffolk County Police Department (the "defendants") move the Court for an order granting summary judgment in their favor and dismissing the complaint. The plaintiff contends that there are triable issues of fact that preclude summary judgment.

## BACKGROUND

This is a summary of the facts that are not in dispute.

The plaintiff passed the civil service exam on March 1, 1992, for the position of police officer with the Suffolk Co. Police Department. On January 22, 1993, the plaintiff was given a physical exam by the County Office of Employee Medical Review. It was determined that the plaintiff's visual acuity, without glasses was 20/200 in each eye and both eyes, and that corrective lenses resulted in a visual acuity of 20/20 in each eye and both eyes. The plaintiff was also found to have blood pressure higher than 140/90. The plaintiff states that he has never been limited in any activity by his eyesight or blood pressure, which can be controlled by medication and at times has measured at a lower rate without medication.

The Municipal Police Training Council minimum standards require that uncorrected visual acuity for police officer candidates be no worse than 20/40 in each eye, and that a candidate's blood pressure be between 90–140 (systolic) and 60–90 (diastolic).

In a letter dated February 1, 1993 from the Office of Employee Medical Review, the plaintiff was notified that he was not qualified to work for the police department because of his eyesight and blood pressure. Upon reconsideration and a second medical exam, the Office of Employee Medical Review adhered to its original determination.

The plaintiff did not file a complaint with the EEOC prior to bringing this lawsuit.

## DISCUSSION

The defendants contend that they are entitled to summary judgment based on the following two arguments: (1) the plaintiff is not a disabled person or handicapped person within the meaning of the Rehabilitation Act, the ADA or the NY State Human Rights Law; (2) the plaintiff did not exhaust administrative remedies required by the ADA prior to commencing this lawsuit.

### A. The summary judgment standard

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c) (summary judgment standard). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Liscio v. Warren,* 901 F.2d 274, 276 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *See Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)); *see also National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue

of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990).

■ However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *See Western World,* 922 F.2d at 121. If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See United National,* 988 F.2d at 354–55; *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

**B. The claims under the Rehabilitation Act and the ADA**

■ The defendants contend that Joyce's complaint must be dismissed as a matter of law because he is unable to make out a prima facie case under the Rehabilitation Act and the ADA. To establish a prima facie case in this action, Joyce would have to demonstrate that: (1) he is a handicapped person within the meaning of the statutes; (2) he is otherwise qualified to perform the duties of a police officer; (3) he was not hired because of his handicap; and (4) that the employer is subject to the statutes. *See e.g., Lyons v. Legal Aid Society,* 68 F.3d 1512, 1515 (2d Cir.1995) and *Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 722 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995). The defendants argue that Joyce cannot establish that he is a handicapped or disabled person with the meaning of the ADA and the Rehabilitation Act.

With regard to the first element, the ADA provides

The term disability means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Using essentially the same language, the Rehabilitation provides:

the term "individual with a disability" means ... any person who

(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities,

(ii) has a record of such an impairment,

(iii) is regarded as having such an impairment.

29 U.S.C. § 706(8)(B).

Joyce's theory is that he is regarded by the defendants as being handicapped or disabled, when in fact his eyesight and blood pressure do not impair his activities in any way. The defendants contend that Joyce does not meet the definitional requirements of the statutes under which he claims because the defendants do not perceive him to be physically impaired. Rather, the defendants state, they consider the plaintiff as not qualified for the position he seeks. The defendants argue that the plaintiff's theory is without merit because it ignores the requirement that the perceived impairment must substantially limit a major life activity.

At this point the Court notes that a police officer candidate will not be disqualified for taking medication to control blood pressure if the candidate presents evidence from a cardiologist that the hypertension and the medication will not interfere with the performance of the physical duties of a police officer. The plaintiff states in his affidavit in opposition to the defendants' motion that he is able to submit such evidence. Accordingly, the Court's decision focuses its primary attention on the issue of the plaintiff's vision.

■ In the case of *Daley v. Koch,* 892 F.2d 212 (2d Cir.1989), the plaintiff brought suit after being rejected for employment with the New York City Police Department based on the results of his psychological profile, which the examining officer concluded revealed "poor judgment, irresponsible behavior and poor impulse control" rendering the plaintiff "unsuitable to be a police officer." *Daley,* 892 F.2d at 214. Subsequent review of the plaintiff Daley's file resulted in a finding that Daley had "significant personality

traits" that would prevent him from effectively functioning as a police officer. *Id.* Daley argued to the Second Circuit that he was disabled within the statutes because being declared unsuitable for work as a police officer was a substantial limitation on a major life activity, which has been defined as including, among other things, working. *Id.* at 215 (citing 45 CFR § 84.3(j)(2)(i)(B)). The Second Circuit stated:

> the regulations cannot be interpreted to extend this definition to include working at the specific job of one's choice. *Tudyman,* 608 F.Supp. at 745. The position of New York City police officer demands unique qualifications that appellant [Daley] has failed to meet. *Being declared unsuitable for the particular position of police officer is not a substantial limitation of a major life activity. See Forrisi v. Bowen,* 794 F.2d 931, 934–35 (4th Cir.1986) (Several courts have decided "unanimously that an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job."). As the district court noted in *Tudyman,* "[f]or the same reason that the failure to qualify for a single job does not constitute a limitation on a major life activity, refusal to hire someone for a single job does not in and of itself constitute perceiving the [person] as a handicapped individual." *Tudyman,* 608 F.Supp. at 746.

*Daley,* 892 F.2d at 215 (emphasis supplied); *see also Roth v. Lutheran General Hosp.,* 57 F.3d 1446 (7th Cir.1995) (doctor's inability to fulfill requirements for certification in a particular field of medicine because of vision impairments does not constitute disability within the meaning of the Rehabilitation Act and the ADA in that the definition of a major life activity does not include working in the specific job of one's choice).

Joyce argues that his case is distinguishable from *Daley.* First, he contends that the alleged impairment at issue here differs from the personality traits that support the finding that the *Daley* plaintiff was unsuitable to hold the position of police officer. The Court disagrees. In the Court's view, the Second Circuit did not base its decision on the type of alleged impairment. Rather, it focused on the fact that the plaintiff was claiming that he was foreclosed from a specific type of work, namely, police work, which did not constitute a substantial limitation of a major life activity. *See Daley,* 892 F.2d at 215.

In this regard, Joyce draws the Court's attention to the case of *Cook v. Rhode Island,* 10 F.3d 17 (1st Cir.1993), where the First Circuit found that a woman with the condition of "morbid obesity" was rejected for the position of residential care facility attendant on the basis of a perceived "substantial impairment." *Cook,* 10 F.3d at 25. The *Cook* court held that the trial evidence revealed that the defendant believed the plaintiff was limited to a degree that "foreclosed a broad range of employment options in the health care industry" so that jurors "reasonably could have found that this pessimistic assessment of plaintiff's capabilities demonstrated that appellant regarded Cook's condition as substantially limiting a major life activity—being able to work." *Id.* Joyce contends that as a result of his eyesight and blood pressure, he is disqualified for every law enforcement position in the state of New York, including that of a corrections officer. However, the Second Circuit has already unambiguously held that "being declared unsuitable for the particular position of police officer *is not a substantial limitation of a major life activity." Daley,* 892 F.2d at 215. A finding to the contrary by this Court would contravene an express principle of law enunciated by the Second Circuit. The Seventh Circuit explained the standard as follows:

> It is well established that an inability to perform a particular job for a particular employer is not sufficient to establish a handicap; the impairment must substantially limit employment generally. *Black v. Marshall,* 497 F.Supp. 1088 at 1099–1100 (D.C.Hawaii 1980). *See e.g., Fuqua v. Unisys Corp.,* 716 F.Supp. 1201 at 1206 (D.Minn.1989); *Elstner v. Southwestern Bell Telephone Co.,* 659 F.Supp. 1328, 1343 (S.D.Tex.1987), *aff'd,* 863 F.2d 881 (5th Cir. 1988); *Diaz v. U.S. Postal Service,* 658 F.Supp. 484, 492 (E.D.Cal.1987); *Carty v. Carlin,* 623 F.Supp. 1181, 1185 (D.Md. 1985); *Tudyman,* 608 F.Supp. at 745.

*Byrne v. Board of Education,* 979 F.2d 560, 565 (7th Cir.1992); *see also Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993) (impaired vision that can be corrected to 20/60, or even 20/200, does not render an individual handicapped within the meaning of the Rehabilitation Act), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994). The need for corrective eyewear in no way substantially limits the plaintiff's employment generally.

In *Daley,* the Second Circuit also reasoned that where the traits upon which the alleged discriminatory treatment is based are "commonplace, they do not rise to the level of an impairment." *Daley,* 892 F.2d at 215. The need for corrective eyewear could reasonably be characterized as "commonplace." The Second Circuit quoted the following passage from the case of *Forrisi v. Bowen,* 794 F.2d 931 (4th Cir.1986):

> "[i]t would debase this high purpose [of protecting the disabled from discrimination in employment] if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment."

*Daley,* 892 F.2d at 215. The need for eyeglasses and blood pressure medication are "minor" and "widely shared."

Joyce also argues that his case is distinguishable from *Daley* because the *Daley* court did not address the issue of whether the defendant's actions were based on an unsubstantiated fear. Joyce notes that certain interpretive guidelines of the Equal Employment Opportunity Commission set forth the following example of how a plaintiff may proceed under the theory that he has a physical impairment that does not substantially limit major life activities, but is treated by a public entity as constituting such a limitation:

> Suppose an employee has controlled high blood pressure that is not substantially limiting. If an employer reassigns the individual to less strenuous work because of unsubstantiated fears that the individual will suffer a heart attack if he or she continues to perform strenuous work, the employer would be regarding the individual as disabled.

29 CFR § 1630.2(*l*) App. (1995). Joyce states that this example is analogous to his situation in the following way, "if an employer assigned to an employee a particular kind of work out of the unfounded fear that if an employee's eye glasses fell off he would constitute a danger to himself and other, the employer would be treating that employee as being disabled." *See* Plaintiff's memo of law in opposition to defendants motion for summary judgment, at p. 5. Joyce again relies on the *Cook* case to support this theory. *Cook* does not expressly discuss this "unsubstantiated fear" theory, but the decision did state,

> On the one hand, the jury could plausibly have found that plaintiff had a physical impairment after all, she admittedly suffered from morbid obesity, and she presented expert testimony that morbid obesity is a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems. On the second hand, the jury could have found that plaintiff, although not handicapped, was treated by MHRH as if she had a physical impairment. Indeed, MHRH's stated reason for its refusal to hire—its concern that Cook's limited mobility impeded her ability to evacuate patients in case of emergency, and its fear that her condition augured a heightened risk of heart disease, thereby increasing the likelihood of workers' compensation claims—show conclusively that MHRH treated plaintiff's obesity as if it actually affected her musculoskeletal and cardiovascular systems.

*Cook,* 10 F.3d at 23.

In the Court's view, the plaintiff's arguments do not recognize that there are critical differences between *Cook,* where the plaintiff was rejected from a "job that requires no unique physical skills, due solely to the perception that the applicant suffers from a physical limitations that would keep her from

qualifying for a broad spectrum of jobs," *Cook,* 10 F.3d at 26, and this case, where the plaintiff was rejected for the position of a police officer. As the Second Circuit stated, "the position of police officer demands unique qualifications." *Daley,* 892 F.2d at 215. The *Cook* court itself distinguishes *Cook* from the cases, *including Daley,* where other courts

concluded that failure to qualify for a job possessing unique qualifications did not constitute a substantial limitation of a major life activity. *See e.g., Welsh v. City of Tulsa,* 977 F.2d 1415, 1417–18 (10th Cir. 1992) (upholding termination as a fire fighter due to minor sensory loss in one hand); *Daley v. Koch,* 892 F.2d 212, 214–16 (2d Cir.1989) (sustaining rejection as police officer because of personality traits of poor judgment and irresponsibility); *Tudyman v. United Airlines,* 608 F.Supp. 739, 746 (C.D.Cal.1984) (sustaining termination as airline steward due to bodybuilder's bulk). These positions are a far cry from the IA–MR post that Cook coveted. We think there is a significant legal distinction between rejection based on a job-specific perception that the applicant is unable to excel at a narrow trade and a rejection based on more generalized perception that the applicant is impaired in such a way as would bar her from a large class of jobs. *Cf. Welsh,* 977 F.2d at 1419 (noting that factors relevant to determining whether an impairment is substantially limiting include '(1) the number and type of jobs from which the impaired individual is disqualified, (2) the geographical area to which the individual has reasonable access, and (3) the individual's job expectations and training') (citations omitted).

Here, the jury rationally could have concluded the [the defendant] MHRH's perception of what it thought to be plaintiff's impairment, as exhibited in its refusal to hire her for the IA–MR position, foreclosed a sufficiently wide range of jobs to serve as proof of substantial limitation.

*Cook,* 10 F.3d at 26.

In the Court's view, police work differs significantly from the position that the *Cook*

plaintiff sought, namely an institutional attendant for the mentally retarded, in that police work *does* require unique skills. *See Daley,* 892 F.2d at 215. Police officers are often forced to make split second judgments, under circumstances that are tense, uncertain, dangerous and rapidly evolving. An officer faces situations as a matter of course in which his own safety as well as the safety of other officers and the public may depend on his visual acuity. The following language of the Supreme Court of Kansas is illustrative:

Obviously, visual acuity of its police officers is a reasonable concern of the City of Topeka. Police officers are not able to call a "time out" in emergencies while they look for their glasses or lost contact lenses. Their jobs often lead them into physical encounters with rowdy persons where such mishaps may occur. No one likes to contemplate a police officer trying to determine, before he fires, which of two blurry shapes is the felon and which is the hostage or a fellow officer.

*Padilla v. City of Topeka,* 238 Kan. 218, 708 P.2d 543 (1985). The Court is not persuaded to the contrary by the plaintiff's argument that the police department does not discharge officers who develop the need for corrective eyewear after they are hired and trained in law enforcement.

In the Court's view, the police department has every right to require that its new recruits be in optimal physical condition. Further, the standards set forth to effectuate that goal are in no way based on "unsubstantiated fears." If the plaintiff's theory was extended to its illogical conclusion, persons with severe myopia could gain employment as law enforcement officers via the federal discrimination statutes based on the argument that corrective eyewear is a reasonable accommodation. Would this not intrude on the government's right to promulgate standards that are rationally related to the legitimate purpose of protecting the public by assuring the best physical abilities of its police officers? Furthermore, the Court agrees with the defendants that a challenge to the standards themselves is properly brought by an Article 78 proceeding. *But see e.g., McCarthy v. Nassau County,* 208 A.D.2d 810, 617 N.Y.S.2d 860 (2d Dep't.1994) ("As this and other courts have repeatedly held, the standards for physical fitness established

by the MPTC pursuant to statute (*see,* Executive Law § 840) have a rational relationship to the ability of an individual to perform police functions, and their application is neither arbitrary or capricious. (citations omitted).")

Viewing the evidence in the light most favorable to Joyce, resolving all ambiguities and drawing all reasonable inferences in his favor, and applying the governing law of the Second Circuit, the Court concludes that Joyce cannot demonstrate that the defendants regarded him as impaired in a way that substantially limits a major life activity. Therefore Joyce cannot establish that he is a handicapped or disabled person under the ADA or the Rehabilitation Act and he cannot demonstrate a prima facie case of discrimination. An action for employment discrimination brought pursuant to the Rehabilitation Act, or analogous sections of the ADA, is properly resolved by granting summary judgment to the defendant employer where the plaintiff was not a handicapped or disabled person within the meaning of the acts at the time of the adverse employment decision. *See Heilweil, supra,* 32 F.3d at 726. Accordingly, the defendants' motion for judgment as a matter of law dismissing the Rehabilitation Act and ADA claims is granted.

Having granted summary judgment in favor of the defendants on other grounds, the Court does not reach the question of whether the plaintiff had to file complaint with the EEOC as a prerequisite to maintaining a cause of action under the Americans with Disabilities Act.

## C. The claims under the New York State Human Rights Law

The exercise of supplemental jurisdiction by a federal court over a state law claim is governed by 28 U.S.C. § 1367 which provides, in relevant part, that "[t]he district court may decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367[c][3]. According to the Second Circuit, in a case addressing the discretionary exercise of supplemental jurisdiction, " 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims.' " *Travelers Ins. Co. v. Keeling,* 996 F.2d 1485, 1490 (2d Cir.1993) (*quoting Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988)); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (discussing pendent jurisdiction); *Morse v. University of Vermont,* 973 F.2d 122, 127 (2d Cir.1992) (same).

Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### CONCLUSION

The defendants' motion for summary judgment, pursuant to Fed.R.Civ.P. 56, dismissing the complaint in its entirety, is granted.

The Clerk of the Court is advised that this Order closes the case.

**SO ORDERED.**