**John DOES I–IV, Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**Civil Action No. 95–1732 (PLF).**

United States District Court,
District of Columbia.

May 6, 1997.

presented to the jury.

Joseph M. Sellers, Washington, Lawyers' Committee for Civil Rights and Urban Affairs, Washington, DC, Douglas B. Mishkin, McKenna & Cuneo, Washington, DC, for plaintiffs.

Sheila Kaplan, Asst. Corp. Counsel, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

This matter came before the Court for a hearing on defendant's motion for summary judgment. Having considered all the papers filed by the parties and having heard argument on the motion, the Court concludes that there are genuine issues of material fact in dispute requiring a trial on plaintiffs' claims. The Court therefore will deny defendant's motion.

## I. BACKGROUND

This case raises the issue of whether the District of Columbia Fire Department has a policy of impermissibly discriminating against job applicants on the basis of psychological or emotional disabilities. Plaintiffs claim that the District of Columbia denied them employment as firefighters on the basis of perceived mental disabilities in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and in violation of 42 U.S.C. § 1983.[1] Plaintiffs also claim that the District has violated Section 794(d) of the Rehabilitation Act by administering pre-employment medical examinations.

When plaintiffs applied to the D.C. Fire Department, they, like all firefighter candidates, were required to complete certain pre-employment mental examinations, including the Minnesota Multiphasic Personality Inventory–2 ("MMPI–2"), a sentence completion test, a figure drawing test and a clinical

interview. Pls.' Opp'n, Ex. E., Deposition of Dr. Jack Raher at 64–65. On the basis of plaintiffs' test results, Dr. Jack Raher, the chief psychiatrist of the District Police and Fire Clinic, determined that there was "a basis for concern" in hiring plaintiffs. Consistent with normal procedure, Dr. Raher referred each plaintiff to psychologists for further evaluation. *Id.* The additional evaluations were conducted by clinical psychologists employed by the District of Columbia, Dr. Michael Barnes and Dr. Dorothy Holmes. These psychologists administered the Wechsler Adult Intelligence Scale–Revised test, the Rorschach ink blot test, the Human Figure Drawing test, the Bender–Gestalt test and another MMPI–2; they also conducted another clinical interview of the plaintiffs. Pls.' Opp'n, Ex. B, Letters from Michael E. Barnes, Ph.D., and Dorothy E. Holmes, Ph.D. to Dr. Jack Raher (Jan. 18, 1990; July 9, 1992; May 21, 1992).

After the second round of tests and clinical interviews, the District denied each plaintiff employment, giving as the sole reason for plaintiffs' rejection the judgment that they were "psychiatrically disqualified." Pl.'s Opp'n, Ex. D, Letter from James W. Flowers to John Doe I (March 25, 1991), Letter from Gerald E. Lewis to John Doe III (July 27, 1992), Letter from Gerald E. Lewis to John Doe IV (May 29, 1992).

## II. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56, Fed.R.Civ.P., summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed,

---

**1.** Although the case is captioned John Does I–IV, John Doe II was dismissed from the case for failure to prosecute on June 5, 1996. The remaining plaintiffs are John Does I, III and IV.

and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513; *see also Washington Post Co. v. U.S. Dept. of Health and Human Services,* 865 F.2d 320, 325 (D.C.Cir.1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

Considering all of the evidence in the light most favorable to the plaintiffs, the Court concludes that there are genuine issues of material fact in dispute regarding each of plaintiffs' claims.

### B. Counts One and Two: Violations of the Rehabilitation Act and Section 1983

The Rehabilitation Act defines an individual with a disability as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). A "major life activity" is defined as a function "such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii). In this case, plaintiffs argue that the District "regarded" them as having mental impairments that substantially limit their ability to work.

The District maintains that it did nothing in violation of the Rehabilitation Act because it never regarded plaintiffs as having any mental impairments. Alternatively, the District argues that even if the District did regard plaintiffs as having mental impairments, it did not consider such mental impairments to substantially limit any of plaintiffs' major life activities, including work. The District's chief psychiatrist, Dr. Jack Raher, maintains that he never considered any of the plaintiffs as "psychiatrically disabled." Def.'s Mot. for Summ. J., Ex. 1, Deposition of Dr. Jack Raher at 123. The District contends that plaintiffs have offered no evidence to dispute this fact or to dispute the fact that the District simply screened and rejected plaintiffs based on personality traits that are incompatible with being a fire fighter.

Plaintiffs argue that despite its contentions to the contrary, the District does indeed regard plaintiffs as mentally impaired or disabled and that there is substantial evidence to that effect. They maintain that the procedures that led to the District's determination not to hire plaintiffs effectively label plaintiffs as such. Plaintiffs point to the following: (1) that the District used clinical psychologists who diagnose mental disorders to examine plaintiffs, not personnel psychologists, professionals specifically trained to identify personality traits, Pls.' Opp'n, Ex. A, Aff. of Richard M. Gist, Ph.D. at ¶¶ 5–15; Ex. I, Deposition of Pamela S. Jennings, Ph.D. at 6; Ex. J, Deposition of Dorothy E. Holmes, Ph.D. at 39; Ex. K, Deposition of Michael E. Barnes at 5–6; (2) that the District used tests that are specifically designed to diagnose mental disorders, not simply to determine personality traits, Pls.' Opp'n, Ex. A, Aff. of Richard M. Gist, Ph.D. at ¶ 4; Ex. F, Deposition of Bruce Muller at 55, 60; (3) that the District deemed plaintiffs "psychiatrically unfit" to be firefighters, Pls.' Opp'n, Ex. D; and (4) that the District's psychologists' reports regarding plaintiffs effectively were diagnoses of mental disorders, Pls.' Opp'n, Ex. B. For all of these reasons, plaintiffs maintain that the District effectively denied plaintiffs positions as firefighters because of perceived mental disabilities or impairments, not simply personality traits, and that a jury could easily reach that conclusion based on evidence in the record.

Most convincingly, plaintiffs point to the language used in the reports of Dr. Holmes and Dr. Barnes. That language mirrors the language used to codify particular mental disorders in the Diagnostic and Statistical

Manual of Mental Disorders–III–R ("DSM–III–R"), a manual psychiatrists and psychologists use to diagnose mental disorders. Pl.'s Opp'n, Ex. G; *see* Pl.'s Opp'n, Ex. H, Aff. of Gary G. Kay, Ph.D. at ¶¶ 4–10. According to plaintiffs, the District's reports effectively diagnose John Doe I with Narcissistic Personality Disorder and Anti–Social Disorder and Personality Disorder Not Otherwise Specified; John Doe III is described as having Aggressive Personality Disorder; and John Doe IV is described as having Dependent Personality Disorder. *Id.* Moreover, the District's own designated expert psychologist agreed that the District was screening for mental disorders, not personality traits. Pl.'s Opp'n, Ex. F, Deposition of Bruce Muller at 60. The Court reads the reports the way plaintiffs do and concludes that, at the very least, a jury is entitled to consider the evidence on both sides of the case.

The District also argues that it does not regard plaintiffs as having mental impairments that "substantially limit" any of their major life activities, including work. As the District points out, an individual's inability to meet the unique requirements of a particular job does not automatically qualify that person as an "individual with a disability" under the Rehabilitation Act. *See Welsh v. City of Tulsa,* 977 F.2d 1415 (10th Cir.1992); *Daley v. Koch,* 892 F.2d 212, 215 (2d. Cir.1989). Because it only viewed plaintiffs as being disqualified from a particular fire fighter position, the District argues that it never considered plaintiffs as being substantially limited in their general ability to work and thus never regarded plaintiffs as individuals with disabilities in violation of the Rehabilitation Act. The District focuses on the statements of its Chief Psychiatrist, Dr. Raher: "I think that there are probably dozens of jobs that [plaintiffs] might be able to do which don't have the special requirements that ... fire fighting require[s]. [Being a firefighter] is an extraordinarily demanding thing, and there are many, many jobs that people can do which don't have the same requirements." Def.'s Mot. for Summ. J., Ex. 1, Deposition of Dr. Jack Raher at 123.

Plaintiffs counter this argument with evidence that the District's psychologists not only determined that plaintiffs were unfit to be firefighters, but also determined that plaintiffs were unfit for a variety of jobs. For example, Dr. Bruce Muller, the District's designated expert psychologist, stated that John Doe IV could not serve as a police officer or in "[a]ny kind of job that required operating without clear cut structure." Pls.' Opp'n, Ex. F., Deposition of Bruce Muller at 248. Dr. Muller also stated that John Doe I would not "do too well in any kind of customer relations or customer service area where he had to be accommodating of difficult people." *Id.* at 254. Regarding John Doe III, Dr. Muller stated that he is unfit to work in any job with demands such as "social interaction, quick decisions, displaying initiative, dealing with reality . . . ." *Id.* at 255.

A jury could well conclude from this testimony that the District believed there were few, if any jobs plaintiffs could do. At the very least, plaintiffs have demonstrated that a substantial dispute exists as to the material fact of whether the District regarded plaintiffs as individuals with mental impairments that substantially limit their ability to work.

*Count Three: Violation of Rehabilitation Act: Preemployment Mental Exams*

Plaintiffs also claim that the District violated Section 794(d) of the Rehabilitation Act by conducting medical examinations, and through the administration of these exams, effectively questioning plaintiffs as to the nature or severity of suspected mental disabilities prior to making the decision of whether plaintiffs were otherwise qualified for employment. Section 84.14 of the regulations promulgated by the Department of Health and Human Services in 1973 to effectuate Section 794(d) of the Rehabilitation Act provides:

[A] recipient [of federal financial assistance] may not conduct a preemployment medical examination or may not make preemployment inquiry of an applicant as to whether the applicant is a handicapped person or as to the nature or severity of a handicap. A recipient may, however, make preemployment inquiry into an appli-

cant's ability to perform job-related functions.

45 C.F.R. § 84.14(a).

The District argues that plaintiffs cannot invoke the protections of this regulation because they do not qualify as "individuals with disabilities" under the Rehabilitation Act and that summary judgment therefore should be granted for defendant as to Count Three. As discussed above, however, the Court concludes that plaintiffs have successfully demonstrated the existence of a genuine dispute regarding whether or not plaintiffs are "individuals with disabilities" under the Rehabilitation Act. The Court therefore denies defendant's motion for summary judgment with respect to Count Three.[2]

For the foregoing reasons, it is hereby

ORDERED that defendant's motion for summary judgment is DENIED; it is

FURTHER ORDERED that a status conference is scheduled for May 27, 1997 at 9:30 a.m. Counsel are expected to evaluate their respective cases for settlement purposes. Submission to alternative dispute resolution, e.g., mediation or neutral evaluation, is encouraged and available by request of the Court at any time, as is a settlement conference before a magistrate judge. At the status conference the parties shall be prepared to discuss how this case will proceed, including, settlement possibilities and scheduling dates for a pre-trial conference and for trial.

SO ORDERED.

---

**2.** To the extent that Section 12112(d)(2) & (3) of the Americans with Disabilities Act, 42 U.S.C. § 12112, was in effect at the time that any of plaintiffs' claims arose, this too is a basis for plaintiffs' claim that defendant violated the Rehabilitation Act by conducting preemployment medical examinations. This section of the ADA is an analog of 45 C.F.R. § 84.14(a):

> [A] covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.... A covered entity

may make preemployment inquiries into the ability of an applicant to perform job-related functions....

A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if—(A) all entering employees are subjected to such an examination regardless of disability....

42 U.S.C. § 12112(d)(2)(A),(B), (3)(A).