**Monica McINTOSH, Plaintiff,**

v.

**BROOKDALE HOSPITAL MEDICAL CENTER, Defendant.**

**No. 94–CV–4189 (JS).**

United States District Court,
E.D. New York.

Oct. 10, 1996.

Stafford H. Byers (Donna Green, of counsel), Byers & Byers, New York City, for Plaintiff.

Peter D. Conrad, Proskauer Rose Goetz & Mendelsohn L.L.P., New York City, for Defendant.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

In the instant case, plaintiff Monica McIntosh alleges that she was fired from her job as a registered nurse for defendant Brookdale Hospital Medical Center ["Brookdale Hospital"] in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. [the "ADA"], and section 296 of the New York State Executive Law. According to the plaintiff, the defendant terminated her employment because she had hypertension, and now asserts a violent incident that plaintiff purportedly instigated as a pretext for her termination.

Pending before the Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that will be further explained below, defendant's motion is granted and this action is dismissed in its entirety.

## FACTUAL BACKGROUND

Viewed in the light most favorable to the plaintiff, the record shows that plaintiff Monica McIntosh began her employment as a registered nurse with defendant Brookdale Hospital in February of 1981, and was assigned to the Schulman Institute, a section of Brookdale Hospital that operates a nursing home. See Compl. ¶¶ 12–13. From February of 1981 through November 20, 1992, plaintiff's employment with the defendant was without incident.

On November 21, 1992, plaintiff entered the main entrance of Brookdale Hospital, whereupon a security guard, Mr. Garcia, requested to see plaintiff's identification. Plaintiff was unable to find her identification, and continued to walk forward. See McIntosh Aff. ¶ 2.

Mr. Garcia then grabbed plaintiff by the left hand. Garcia refused plaintiff's request to make a phone call to the unit where she worked to inform her superiors that she would be late. See id. ¶¶ 3–4.

Several other security guards subsequently arrived at the scene. While Mr. Garcia resumed holding plaintiff's left hand, Lieutenant Cirello grabbed plaintiff's right hand. See id. ¶ 5. Shortly thereafter, Ms. Daniels, a supervisor in the nursing office, informed the guards that plaintiff was an employee of the hospital. According to plaintiff, another supervisor told Daniels not to get involved. See id. ¶ 6.

Plaintiff then remarked that if she were a white nurse she would not be treated in this manner, and attempted to yank her hand away. As she did so, her arm knocked Lieutenant Cirello's glasses off. See id. ¶¶ 7–8. Thereupon, Mr. Davis, one of the guards, told the guards holding the plaintiff to let her go, and asked plaintiff to follow him to make out a report. Plaintiff then informed Mr. Davis that she was late for work, and proceeded to exit the building. See id. ¶¶ 9–10.

As plaintiff attempted to exit the building, two of the guards chased her, and one of them grabbed her by the neck and dragged her inside the building. As a result thereof, plaintiff's buttons were pulled off her coat and her blouse, and her bra strap was broken. See id. ¶¶ 10–11.

Shortly thereafter, Ms. Jones, a supervisor, asked plaintiff to prepare a report describing what transpired and handed plaintiff a form. Upon taking this form with her to the floor where she worked, plaintiff began to feel ill. Plaintiff then asked a nurse to take her blood pressure, and it registered 180/120. See id. ¶ 15.

Plaintiff then called Ms. Jones to inform her that she felt ill and wished to go to the emergency room. See id. ¶ 16. In the emergency room, plaintiff's blood pressure was taken once more and again registered 180/120. Plaintiff was given medication for hypertension, provided a place to rest, and had her blood pressure monitored at regular intervals. After several hours, plaintiff's blood pressure fell to 160/110. At that point, plaintiff was given a prescription by the emergency room physician, sent home, and

was instructed to see a private physician. *See id.* ¶ 17, Ex. A.

Ms. Jones called plaintiff that evening to inquire if she would be reporting to work the next day. Plaintiff responded that she would not because she still felt ill. Jones did not request that plaintiff provide a statement concerning the incident. *See id.* ¶ 18. Plaintiff subsequently called in sick the next day. *See id.* ¶ 19.

On November 23, 1992, plaintiff visited her private physician who suggested that plaintiff be given two weeks' sick leave as a result of her hypertension. *See id.* ¶ 20, Ex. B.

Later on November 23, 1992, Margaret Burke, the Acting Director of Nursing at Brookdale Hospital, telephoned the plaintiff, at the request of Christine Edwards, the Assistant Director of Human Resources at Brookdale Hospital. *See* McIntosh Aff. ¶ 21; Burke Aff. ¶¶ 2, 4, 5; Edwards Aff. ¶¶ 1, 2, 6. During this telephone conversation, plaintiff informed Burke of her physician's recommendation that she not return to work for two weeks. Burke did not request at that time that a report of the incident be provided to her. In addition, plaintiff did not make any reference to the necessity of consulting an attorney prior to speaking to her. *See* McIntosh Aff. ¶ 21; *compare* Burke Aff. ¶ 5 (testimony refuted by plaintiff's affidavit).

Approximately one week later, Burke again telephoned the plaintiff to request that she come to Brookdale Hospital. The record is uncontroverted that during this telephone conversation plaintiff told Burke that, upon the advice of her attorney, she would not attend any meeting at Brookdale Hospital or discuss the incident that transpired on November 21, 1992 with either Burke or Edwards. *See* Burke Aff. ¶ 6.

Later that same day, Burke reported to Edwards that plaintiff had refused to participate in any discussion of the November 21, 1992 incident. *See* Burke Aff. ¶ 7. Edwards thereupon suspended plaintiff indefinitely. *See* Edwards Aff. ¶ 8. In connection with this determination, on December 8, 1992 Edwards wrote a letter to Local 1199 (of which plaintiff was a member) stating that plaintiff "ha[d] been suspended indefinitely pending investigation of a serious incident." Edwards Aff. ¶ 9, Ex. C.

Plaintiff returned to work on December 7, 1992, one day prior to her indefinite suspension. *See* McIntosh Aff. ¶ 22. According to a note provided by her physician, Dr. Sinha, as of December 7, 1992 plaintiff had recovered sufficiently from her hypertension to enable her to return to work without any restrictions. *See id.* Ex. B. Upon returning to work, plaintiff reported to the Employees' Health Services Unit where she was examined, registered a blood pressure level of 160/110, and was informed that her blood pressure was too high to permit her to be cleared for work. *See id.* ¶ 22. Plaintiff thereafter returned to her private physician, who recommended two additional weeks of sick leave. Plaintiff then notified the nursing office at Brookdale Hospital of her physician's recommendation. *See id.* ¶ 23.

On December 18, 1992, having not heard from the plaintiff, Edwards notified Local 1199 in writing that she "ha[d] reviewed the indefinite suspension of [plaintiff] and said suspension is hereby converted to termination with cause." Edwards Aff. ¶ 10, Ex. D.

On December 21, 1992, plaintiff returned to work, not having yet been informed of her termination. *See* McIntosh Aff. ¶ 24. According to a note provided by her private physician, as of December 21, 1992 plaintiff had recovered sufficiently from her hypertension to enable her to return to work without any restrictions. *See id.* Ex. C. Upon arriving at Brookdale Hospital, Ms. Burke informed plaintiff that her employment had been terminated. *See id.* ¶¶ 24–25.

Pursuant to the applicable collective bargaining agreement, plaintiff filed a grievance and arbitrated the circumstances of her termination. By decision dated June 6, 1993, the arbitrator denied plaintiff's grievance, finding plaintiff's version of the incident that transpired on November 21, 1992 not to be credible. *See* McIntosh Aff.Ex. D. Plaintiff subsequently petitioned the New York State Supreme Court, Kings County, in September 1993 to vacate the arbitration award. Upon removal of that action to federal district court for the Eastern District of New York, plaintiff stipulated to the voluntary dismissal

of said action with prejudice. *See* McIntosh Aff. ¶ 27.

On September 20, 1993, plaintiff notarized an administrative charge in the office of the New York City Commission on Human Rights alleging disability discrimination against the defendant. *See id.* ¶ 37, Ex. F. The New York City Commission on Human Rights did not mark this charge as filed until October 19, 1993, and then waived this charge to the Equal Employment Opportunity Commission ["EEOC"] pursuant to its contract agreement with the EEOC governing cases "when the last date of allegation and the date of notarization are between 240–300 days old." McIntosh Aff.Ex. G (correspondence from New York City Commission on Human Rights to EEOC, dated Dec. 17, 1993). In this regard, the Court notes that the date of notarization of September 20, 1993 is 273 days after the date that plaintiff was informed that her employment had been terminated (i.e., December 21, 1992), while the date of filing of October 19, 1993 is 302 days after such date. Following the EEOC's issuance of a right-to-sue letter, plaintiff commenced this action.

Pending before the Court is defendant's motion to dismiss plaintiff's complaint, or in the alternative for summary judgment. Because plaintiff has not objected to the treatment of the instant motion as one for summary judgment, and moreover has proffered her own affidavits in opposition to defendant's application, the Court will regard defendant's motion as seeking summary judgment. In addition, plaintiff has not requested a continuance for further discovery, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, as a basis to deny defendant's application.[1]

Defendant sets forth three separate arguments in support of its motion for summary judgment. First, defendant contends that there is no issue of fact concerning the plaintiff's failure to comply with the statutory requirements governing the timely filing of

an ADA claim with the EEOC. Second, defendant argues that plaintiff fails to make out a prima facie case under the ADA because she has not presented any evidence to establish that her hypertension was more than a transitory condition. Finally, defendant asserts that even assuming that plaintiff succeeds in establishing a prima facie case under the ADA, plaintiff fails to raise a triable issue of fact that the hospital's reason for terminating her employment was pretextual.

On June 18, 1996, counsel for both parties appeared for oral argument. At oral argument, plaintiff's counsel conceded that there was no proof in the record that plaintiff's condition of hypertension existed for a substantial period of time. The Court thereupon instructed plaintiff's counsel to submit medical evidence of plaintiff's alleged disability by July 3, 1996.

On July 1, 1996, plaintiff filed an affidavit of her treating physician, S.N. Sinha, M.D. In his affidavit, Dr. Sinha testifies "[t]hat from November 23, 1992, to March 1993 Ms. McIntosh [had] uncontrolled [h]ypertension," Sinha Aff. ¶ 3, during which period "her blood pressure was elevated but fluctuating." *Id.* ¶ 4. According to Dr. Sinha, plaintiff's blood pressure presently is "elevated but is somewhat under control." *Id.* ¶ 5. Dr. Sinha's affidavit, however, does not address what restrictions, if any, plaintiff's hypertension placed upon her ability to work. Furthermore, Dr. Sinha does not contradict his prior doctor's notes which stated that as of December 7, 1992 and December 21, 1992 respectively, plaintiff had recovered sufficiently from her hypertension to enable her to return to work without any restrictions. *See* McIntosh Aff.Exs. B, C.

## DISCUSSION

### I. Standards Governing Motion for Summary Judgment

Under the law of the Second Circuit, a district court must weigh the following con-

---

1. In addition to opposing defendant's motion for summary judgment, plaintiff originally cross-moved to vacate the June 1993 arbitration award which upheld the legality of the plaintiff's discharge by the defendant in accordance with the applicable collective bargaining agreement. Plaintiff subsequently withdrew this cross-mo-

tion. Thereafter, plaintiff wrote the Court requesting that this cross-motion be reinstated. Following a conference held before the Court on March 21, 1996, plaintiff withdrew her request to reinstate this cross-motion. Accordingly, said cross-motion is not pending before the Court.

siderations in evaluating whether to grant a motion for summary judgment with respect to a particular claim:

> First, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.... Finally, the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.

*Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (internal case citations omitted). In evaluating the above considerations, a court must be mindful of whether the purported factual dispute is material, because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## II. Timeliness of Plaintiff's Charge Filed with the EEOC

■ Defendant contends that summary judgment should be granted dismissing this action because plaintiff failed to file a timely charge of discrimination with the EEOC.

The enforcement provisions of Title VII of the Civil Rights Act of 1964, as amended, are applicable to actions brought under the ADA. *See* 42 U.S.C. § 12117(a); *Bent v. Mount Sinai Medical Center,* 882 F.Supp. 353, 355 (S.D.N.Y.1995). Under the ADA, a plaintiff in a "deferral state" such as New York, as a prerequisite to suit, must file a charge of discrimination with the EEOC "within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, *whichever is earlier...."* 42 U.S.C. § 2000e–5(e)(1) (emphasis added). In addition, no charge may be filed with the EEOC "before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated...." 42 U.S.C. § 2000e–5(c).

The defendant asserts that plaintiff filed her administrative charge with the EEOC at least two days too late, and argues that the plaintiff's notarization of her administrative charge before the New York City Commission on Human Rights prior to the expiration of the 300–day limitations period is irrelevant under the statutory scheme. The Court disagrees with the defendant's contention. Although the 300–day requirement is a statutory prerequisite to suit which generally may not be avoided absent misleading conduct on the part of the defendant, *see Crossman v. Crosson,* 905 F.Supp. 90, 93–94 (E.D.N.Y. 1995), *aff'd,* No. 95–9215, 1996 WL 280096 (2d Cir. May 15, 1996), plaintiff has made a sufficient showing of compliance with this statutory requirement for purposes of the present motion for summary judgment. Specifically, the New York City Commission on Human Rights, in a letter to the EEOC dated December 17, 1993, itself acknowledged that pursuant to a contract agreement with the EEOC, plaintiff's charge was timely filed because the date that plaintiff notarized her administrative complaint before the New York City Commission on Human Rights (i.e., September 20, 1993) was less than 300 days after the date of the alleged discriminatory conduct. Construing this correspondence as a waiver of jurisdiction to the

EEOC retroactive to the date of notarization,[2] it follows that a genuine issue of fact is presented as to whether plaintiff timely filed her administrative charge with the EEOC. Accordingly, defendant's contention that summary judgment should be granted on the ground that plaintiff failed to file a timely charge with the EEOC is rejected.

## III. Establishment of a Disability within the Meaning of the ADA

The defendant next contends that plaintiff's ADA claim must be dismissed because the record does not establish that plaintiff's high blood pressure substantially limited one or more of her major life activities so as to constitute a disability within the purview of the ADA. Specifically, defendant asserts that the record fails to disclose that the plaintiff's episode of high blood pressure was anything more than a transitory condition brought about by the excitement of the incident that occurred on November 21, 1992, and directs the Court's attention to plaintiff's own affidavit which shows that, just a few weeks later, she was able to return to work without any restrictions. In response to defendant's contention, the plaintiff principally asserts that because Brookdale Hospital was on notice, as a result of its own tests upon the plaintiff, that plaintiff's blood pressure was elevated during the one-month period that preceded her termination, a reasonable jury could find that plaintiff was terminated, at least in part, because the hospital regarded her as having a disability within the meaning of the ADA.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees...." 42 U.S.C. § 12112(a). The term "discriminate" is defined to include, *inter alia*, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee...." 42 U.S.C. § 12112(b)(5)(A).

In order to make out a prima facie case of discriminatory discharge under the ADA, a plaintiff must produce some evidence tending to establish: (a) that she has a "disability" within the meaning of the ADA; (b) that with or without reasonable accommodation, she can perform the essential functions of the employment position that she holds (i.e., that she is a "qualified individual with a disability" under 42 U.S.C. § 12111(8)); and (c) that she has been discharged from her employment because of the disability or because of the need to make reasonable accommodation for such disability. *See Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1318 (8th Cir.1996); *see also Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir.1994) (case under Rehabilitation Act, 29 U.S.C. § 701 et seq.),[3] *cert. denied*, ⎯ U.S. ⎯⎯, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

Of central concern to the case at bar is the ADA's definition of the term "disability." Under the ADA, a person can meet this threshold requirement by showing either that she has (A) "a physical or mental impairment that substantially limits one or more of [her] major life activities;" or (B) that she has "a record of such an impairment;" or (C) that she is "regarded as having such an impairment." 42 U.S.C. § 12102(2). In the instant case, plaintiff asserts that she has presented triable issues of fact with respect to the first and third categories of disability set forth in 42 U.S.C. § 12102(2).[4] The Court will address each of these categories in turn.

**2.** Defendant has not provided the Court with the applicable contract agreement to rebut this inference.

**3.** The definition of "handicap" under the Rehabilitation Act is essentially identical to the definition of "disability" under the ADA. Because Congress intended that the case law developed under the Rehabilitation Act be generally applicable to the ADA, this Court will use the case law under the Rehabilitation Act in its analysis of the

issues at bar. *See McDonald v. Commonwealth of Pennsylvania*, 62 F.3d 92, 95 (3d Cir.1995).

**4.** The Court notes that there is no evidence in the record to suggest that plaintiff had a record of hypertension prior to November 21, 1992. To the extent that plaintiff contends that her condition of hypertension on or after November 21, 1992 entered into the defendant's decision to terminate her employment, the Court addresses such assertion under the first and third catego-

### A. Physical or Mental Impairment That Substantially Limits One or More Major Life Activities

■ At the outset, the Court notes that the record supports the inference that plaintiff had a physical impairment, i.e., hypertension, and that the phrase "major life activities" is defined in the ADA Regulations to include "working." 29 C.F.R. § 1630.2(i). Accordingly, the issue before the Court with respect to this prong of the disability analysis crystallizes to whether a reasonable jury could find that plaintiff's hypertension *substantially limited* her ability to work. *See* 42 U.S.C. § 12102(2).

As interpreted in the ADA Regulations, an impairment "substantially limits" a major life activity when a person is:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

The ADA Regulations instruct that in determining whether an individual is substantially limited in a major life activity, the following factors should be considered:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).[5]

Applying the above guidelines to the evidence as viewed in the light most favorable to the plaintiff, the Court finds that the plaintiff fails to establish that her hypertension substantially limited her ability to work.[6] Although her treating physician has affirmed "[t]hat from November 23, 1992, to March 1993, [plaintiff had] uncontrolled [h]ypertension," Sinha Aff. ¶ 3, during which period "her blood pressure was elevated but fluctuating," *id.* ¶ 4, the record is uncontroverted that as of her termination date of December 21, 1992—one month after the onset of her hypertension—plaintiff had recovered sufficiently from her condition to enable her to return to work without any restrictions. *See* McIntosh Aff.Ex. C. Moreover, in view of the aforesaid absence of any restrictions placed upon the plaintiff's activities at work by her treating physician, *see id.*, the record fails to suggest that as of December 21, 1992 it *reasonably could be expected* that plaintiff's hypertension would recur at a similar level of severity and thereby substantially limit her ability to work.

The decisive weight of authority holds that an impairment that prevents an individual from working for a period of one month, and that is not expected to recur with similar consequences in the foreseeable future, does not constitute a disability within the meaning of the ADA. *See Sanders v. Arneson Prods., Inc.,* 91 F.3d 1351, 1354 (9th Cir.1996) (Employee's temporary psychological impairment, which lasted approximately three and one-half months and resulted in employee's request for leave for entire duration of impairment, was of insufficient duration to constitute a disability under the ADA.); *McDonald v. Commonwealth of Pennsylvania,*

---

ries of disability set forth in 42 U.S.C. § 12102(2). For completeness of record, however, the Court expressly holds that the same results would obtain if this case were analyzed under the second category of disability set forth in 42 U.S.C. § 12102(2).

**5.** Other relevant factors set forth in the regulations include (1) the number and type of jobs for which the impaired individual is disqualified, (2) the geographical area to which the individual has

reasonable access, and (3) the individual's job expectations and training. *See* 29 C.F.R. § 1630.2(j)(3).

**6.** Hypertension may constitute a disability under the ADA where the individual's hypertension substantially limits his or her ability to work. *See Oswalt v. Sara Lee Corp.,* 74 F.3d 91, 92 (5th Cir.1996) (per curiam).

62 F.3d 92, 95–96 (3d Cir.1995) (inability to work for two months following surgery not a disability); *Deghand v. Wal–Mart Stores, Inc.*, 926 F.Supp. 1002, 1013 (D.Kan.1996); *Shaw v. Monroe County*, No. 95–70107, 1996 WL 426483, at # 12, 1996 U.S.Dist. LEXIS 6669, at *36 (E.D.Mich. Apr. 18, 1996); *Neblett v. Rubin*, Appeal No. 01943580, Agency No. 93–2049, 1995 WL 230446, at *2 (E.E.O.C. Apr. 11, 1995); *Blanton v. Winston Printing Co.*, 868 F.Supp. 804, 807 (M.D.N.C.1994); *see also Evans v. City of Dallas*, 861 F.2d 846, 852–53 (5th Cir.1988) (Rehabilitation Act case). Viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could not find that plaintiff had more than a transitory impairment at the time that her employment was terminated. Accordingly, to the extent that plaintiff asserts a disability on the basis of an impairment that substantially limited her ability to work, summary judgment is granted in favor of the defendant.

### B. *Perceived Disability*

 Although plaintiff's motion papers are not entirely clear on this issue, her arguments can be construed to assert that even though her hypertension may not have substantially limited her ability to work, she nonetheless has succeeded in making out a prima facie case of disability discrimination on the basis that her employer perceived her as having a disability. *See* 42 U.S.C. § 12102(2)(C). Under the perceived-disability doctrine, " 'a person is considered disabled for purposes of the ADA if that person is regarded as having an impairment that substantially limits a major life activity.' " *Greenberg v. New York State*, 919 F.Supp. 637, 641 (E.D.N.Y.1996) (quoting *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir. 1995)). Although this issue presents a closer call than the previously-discussed category of disability, the Court concludes that no reasonable jury could find that the defendant perceived the plaintiff to have a disability within the meaning of the ADA.

Viewing the evidence in the light most favorable to the plaintiff, the record shows that, prior to November 21, 1992, Brookdale Hospital had no knowledge or reason to suspect that plaintiff had high blood pressure. Defendant was first placed on notice of plaintiff's hypertension on November 21, 1992 following plaintiff's altercation with the hospital's security guards when plaintiff, feeling ill, asked a nurse to take her blood pressure and it registered 180/120. *See* McIntosh Aff. ¶ 15. During the following month, there was nothing to suggest to defendant that plaintiff's hypertension was more than a transitory condition brought about by the excitement of the incident of November 21, 1992. This conclusion is supported by the first doctor's note of plaintiff's treating physician which states that plaintiff, as of December 7, 1992, had sufficiently recovered from her hypertension to enable her to return to work without any restrictions.[7] *See id.* Ex. B. Although the plaintiff ultimately was sent home from work on December 7, 1992 when her blood pressure level measured 160/110, *see id.* ¶ 22, her private physician recommended only two additional weeks of sick leave. *See id.* ¶ 23. Accordingly, in light of this record, the Court finds no triable issue of fact to be presented as to whether defendant Brookdale Hospital perceived plaintiff's hypertension to constitute more than a transitory condition. *See Aucutt*, 85 F.3d at 1319–20.

 Finally, plaintiff cannot successfully argue that the stressful nature of her employment as a nurse is dispositive to the determination of whether defendant regarded her as having a disability. This conclusion obtains because the evaluation of whether an individual has a disability under the ADA is not job specific; rather " 'the impairment must substantially limit employment generally.' " *Joyce v. Suffolk County*, 911 F.Supp. 92, 95 (E.D.N.Y.1996) (quoting *Byrne v. Board of Educ.*, 979 F.2d 560, 565 (7th Cir.1992)). Moreover, "an inability to perform a single particular job does not con-

---

**7.** Plaintiff's treating physician subsequently gave her a second doctor's note stating that plaintiff had sufficiently recovered from her hypertension to enable her to return to work without any restrictions as of December 21, 1992. *See* McIntosh Aff.Ex. C. Because the uncontradicted evidence shows that the defendant decided to fire the plaintiff prior to her return to work on that day, this note does not figure into the analysis of whether the defendant perceived the plaintiff to have a disability as the basis for its decision to terminate her employment.

stitute a substantial limitation of the individual's ability to work." *Greenberg,* 919 F.Supp. at 642; *see* 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working...."); *Heilweil,* 32 F.3d at 723–24 (Rehabilitation Act case); *Daley v. Koch,* 892 F.2d 212, 215–16 (2d Cir.1989) (Rehabilitation Act case). Accordingly, because the record does not support a reasonable inference that defendant regarded plaintiff's hypertension to have substantially limited her ability to work in spheres of employment beyond her position as a nurse at Brookdale Hospital, summary judgment likewise is warranted on plaintiff's perceived-disability claim.

## IV. Additional Matters

In view of the Court's determination that plaintiff has not made out a prima facie case under the ADA, the Court does not reach defendant's contention that plaintiff has failed to raise a triable issue of fact that the hospital's reason for her discharge was pretextual.

In addition, because this Court is dismissing plaintiff's sole federal claim and no other basis for federal jurisdiction has been pleaded in the complaint, the Court declines to exercise supplemental jurisdiction over plaintiff's pendent claim under section 296 of the New York State Executive Law, and accordingly this claim is dismissed. *See* 28 U.S.C. § 1367(c)(3). In any event, the parties do not dispute that identical standards apply under the ADA and section 296 of the Executive Law, and therefore this provides an alternative basis for dismissal of the pendent claim.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED and this action is DISMISSED in its entirety. The Clerk of the Court shall mark this case as closed.

SO ORDERED.