Adam **BRUZZESE**, Plaintiff,

v.

Loretta E. **LYNCH**, Attorney General of the United States, Defendant.

**13-CV-5733**

United States District Court, E.D. New York.

Signed June 8, 2016

Adam Bruzzese, Howard Brandon Zakai, Raymond Granger, Granger & Associates LLC, 40 Fulton Street, 23rd Floor, New York, NY 10038, Tel: 212-732-7000, Fax: 212-732-7001, hzakai@granger associates.com, rgranger@granger associates.com

Loretta E. Lynch, James R. Cho, Timothy D. Lynch, United States Attorney's Office, Eastern District Of New York, 271 Cadman Plaza East, Brooklyn, NY 11201, Tel: 718-254-6519, Fax: 718-254-7489, james.cho@usdoj.gov, timothy.lynch3@usdoj.gov

## MEMORANDUM AND ORDER

Jack B. Weinstein, Senior United States District Judge

### Table of Contents

I. Introduction. . . .239

II. Facts . . .240

III. Procedural Background. . . .242

IV. Law . . .243

  A. Summary Judgment . . .243

  B. Rehabilitation Act of 1973 . . .244

  1. Qualified Individual . . .244

  2. Individual with a disability . . .245

V. Application of Law to Facts . . .246

  A. Plaintiff cannot make out a *prima facie* case. . . .246

  1. Plaintiff is not a "qualified individual". . .246

  2. Plaintiff is not an "individual with a disability" . . .247

  3. Plaintiff was not discriminated against because of a disability. . .247

  B. Defendant offered non-discriminatory reasons which are not pretextual . . .248

VI. Conclusion . . .249

## I. Introduction

This case demonstrates the necessity of granting substantial deference to supervisors of employees who may endanger the public by their control of firearms or other dangerous instruments. When firearms or other dangerous instruments are involved, an employer must have complete confidence in the ability of its employees to safely and properly perform his or her duties, and be able to remove that employee when that confidence is absent. A supervisor in an organization issuing firearms to its employees has a special obligation to the public to take precautions against their misuse.

As law enforcement officers, federal Special Agents are given the right to use

deadly force in complex, emergency situations. Plaintiff gave his supervisors good reason to question his judgment. They appropriately took away his firearm after conducting a thorough investigation. If plaintiff had retained his firearm and had inappropriately injured or killed someone, not only would there be the loss of innocent life, but his supervisors and employer would face significant public criticism, and liability.

Adam Bruzzese sues Attorney General Loretta Lynch in her capacity as head of the Department of Justice, which administers the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). He alleges discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* Plaintiff's claims stem from his re-assignment from the position of Special Agent with the ATF to that of Technical Surveillance Specialist—in his view due to his mental health condition.

Defendant moves for summary judgment. A hearing was held on June 1, 2016. *See* Hr'g Tr., June 1, 2016. The motion is granted.

## II. Facts

Plaintiff joined the ATF in 2000 as a Special Agent. Pl.'s Counterstatement of Material Facts in Response to Def.'s Statement of Undisputed Material Facts Pursuant to Local Civ. R. 56.1, Feb. 20, 2016, ECF No. 58-1 ("56.1 Response"), at ¶ 1. The Special Agent job description prescribes the use of "tact and discretion in investigative assignments which are typically of a sensitive nature." *Id.* at ¶ 13. Carrying a firearm is an essential function of a Special Agent's job. *Id.* at ¶ 5.

From October 2002 to June 2009, plaintiff was assigned to Group IV in the New York Field Division office in Brooklyn. *Id.* at ¶¶ 2, 6. The Special Agents in Group IV, of which there are generally 8-10, focus on firearms trafficking cases. *Id.* at ¶¶ 3, 10. From time to time their work is integrated with that of officers from the New York Police Department and New York State Police. *Id.* at ¶ 11. While a member of Group IV, plaintiff's immediate supervisor was Group Supervisor Eric Immesberger. His second-level supervisor was Assistant Special Agent in Charge Delano Reid. His third-level supervisor was Special Agent in Charge Ronald Turk. *Id.* at ¶¶ 7-9.

Plaintiff's immediate supervisor became concerned about plaintiff's mental health after incidents including:

- an interaction between plaintiff and Group Supervisor Immesberger following a failed undercover drug purchase operation in the Summer of 2005;

- an arrest of a wanted fugitive in 2006 at a Manhattan office building without submitting a tactical plan before-hand;

- plaintiff's reaction to his fatal shooting of a suspect during an undercover operation, including comments he purportedly made afterwards and his participation in support and counseling groups;

- a joke made during a pre-operation briefing in August 2008 that, if there were a robbery attempt, other agents would hear a gunshot;

- acting "hyper" in front of Assistant Special Agent in Charge Reid when discussing a potential undercover operation, and arguing with Group Supervisor Immesberger upon his arrival at the staging area for the operation;

- plaintiff's failure to obtain an arrest warrant following an undercover operation;

- plaintiff's alleged making suicidal comments; and

• reports of plaintiff's hand shaking uncontrollably.

Plaintiff disputes only the details of each of these incidents. He argues that the context in which they occurred show that he did nothing wrong or, at worst, acted inappropriately at times and later apologized appropriately for his behavior.

On September 4, 2008, Reid met with plaintiff and told him that based on his concern over safety issues, he wanted plaintiff to surrender his firearm. 56.1 Response at ¶¶ 137, 140. Plaintiff was informed that he was being temporarily reassigned to ATF's Tactical Operations Office where he would not participate in law enforcement operations in the field. *Id.* at ¶ 141. He kept his status as Special Agent, salary, overtime rate, and government-owned vehicle privileges. *Id.* at ¶ 142.

Between December 2008 and March 2009, plaintiff underwent a Fitness-for-Duty evaluation ("FFD"). *Id.* at ¶ 145. The FFD consisted of (i) an independent medical examination performed on December 3, 2008, by Robert Boesch, M.D.; (ii) an independent psychological evaluation conducted on February 25, 2009, by Marc Janoson, Ph.D.; (iii) a report dated March 9, 2009, interpreting the psychological findings of Dr. Janoson by Dr. Janoson and Neil S. Hibler, Ph.D.; (iv) an independent psychiatric evaluation conducted on March 11, 2009, by Samoon Ahmad, M.D.; (v) a discussion of the case with Drs. Hibler and Ahmad by telephone on April 16, 2009; and (vi) a review of documentation provided by ATF and the medical reports and records by Haviva Goldhagen, M.D. *Id.* at ¶ 146.

Dr. Boesch's examination reflected normal results with "[n]o history of neurologic or psychiatric symptoms." *Id.* at ¶ 147. Dr. Ahmad's evaluation concluded that plaintiff's "behavior and actions ... are a function of his personality and style ... [T]hough these traits do not rise to the level of personality disorder they seem to validate the presence of *personality factors that could result in future over-reactions.*" Decl. of Howard B. Zakai in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J., Feb. 19, 2016, ECF No. 57-1 ("Zakai Decl."), at Ex. 25 (emphasis added).

Dr. Goldhagen, who reviewed the reports of Drs. Boesch, Janoson, Hibler, Ahmad, and ATF records, reached the following conclusion with respect to serious job safety issues caused by plaintiff's "personality characteristics" rather than his "mental condition":

> Based on the independent medical and psychiatric evaluations, the documents provided by ATF, and my knowledge of the essential functions of the job, *it is my professional opinion that SA Bruzzese does not have a medical condition* that would adversely impact his ability to perform the full functions of his job safely and effectively. However, *he does have personality characteristics that appear to increase the safety risks for himself and others in the performance of the job,* leading me to question his suitability for the job of ATF Special Agent. All conduct, behavior or performance deficits should be dealt with administratively, including the continued suspension of arming authority should management continue to have significant safety concerns.
>
> . . .
>
> SA Bruzzese's personality characteristics appear to play a significant role in his conduct and behavior at work and his style of interacting, and do raise *significant concern regarding his ability to perform the full functions of his job safely* and effectively.
>
> . . . .

Based on SA Bruzzese's personality characteristics, *his suitability for a law enforcement job is questionable.*

. . .

Based on the results of the independent psychological and psychiatric evaluations, SA Bruzzese does not currently evidence a mental health condition that would prevent him from performing the essential functions of his job safely and effectively. He does, however, have demonstrated personality characteristics that explain his behavioral style at work. Personality characteristics are not clinical disorders. Any problems arising out of personality characteristics may affect suitability for a particular job and are considered administrative, not medical, issues. However, based on the information supplied by management and the independent examination results, *management is strongly encouraged to continue to restrict SA Bruzzese's arming authority* pending further training and other measures designed to improve SA Bruzzese's ability to effect more reasoned, thoughtful, and appropriate decisions, particularly under stressful and safety sensitive conditions.

Cho Decl. at Ex. 16 (emphasis added).

In the fall of 2008, plaintiff had several counseling sessions with Lawrence Florek, a licensed clinical social worker. 56.1 Response at ¶ 159. On April 27, 2009, Mr. Florek completed an evaluation form reporting that plaintiff had an excellent prognosis with "no static medical or psychiatric condition to report" and "a stable and cohesive personality structure." Cho Decl. at Ex. 17. Mr. Florek diagnosed plaintiff with DSMIV Axis I 309.28 (anxiety and depressed mood). *Id.*

After receiving the results from the FFD, and based on input from plaintiff's supervisors, on June 4, 2009 Special Agent in Charge Turk permanently reassigned plaintiff to the non-law enforcement position of Technical Surveillance Specialist. 56.1 Response at ¶¶ 167, 171; Hr'g Tr., June 1, 2016, at 33:17-34:4. Special Agent Turk concluded: "when I made my assessment, with the totality of all the issues that I could read . . . and gather, risk and safety were my greatest concerns, absolutely." Hr'g Tr., June 1, 2016, at 39:9-11. Turk informed plaintiff of the reassignment at a meeting on June 4, 2009; during the meeting, Turk did not explicitly raise any concerns about plaintiff's mental health or fitness. 56.1 Response at ¶¶ 170, 180. Plaintiff's letter of reassignment does not mention any perceived mental illness or disability. *Id.* at ¶ 183.

In his new position, plaintiff no longer is considered a Special Agent but he receives the same pay as one, and he continues to receive equivalent step increases in his pay. *Id.* at ¶¶ 185, 186. He also has retained his government-owned vehicle privileges and the same work hours. *Id.* at ¶¶ 188, 189.

Bruzzese contends that his promotion potential is limited because there are no jobs above a GS-13 pay grade in his new position, whereas there are jobs for Special Agents at the GS-14 and GS-15 pay grades. He also argues that his benefits at retirement will be different then they would have been before reassignment. *Id.* at ¶¶ 186, 187.

### III. Procedural Background

On August 20, 2009, plaintiff filed an Equal Employment Opportunity complaint with the Department of Justice. Cho Decl. at Ex. 20. In his complaint, he alleged "I was transferred from an 1811 special agent position to a non-law enforcement position due to a perceived mental disability which I say is false. It was improper for ATF to

transfer me and they discriminated against me by doing so." *Id.*

The Department of Justice acknowledged receipt of plaintiff's claim on August 28, 2009. It described the allegation of the complaint as "discriminat[ion] against [plaintiff] on the basis of a perceived mental disability, when effective June 7, 2009, you were reassigned from a GS-1811 Special Agent New York Group IV position, to a GS-1801 Technical Surveillance Specialist position in the Red Hook, New York office." *Id.* at Ex. 22. On March 30, 2010, plaintiff requested a hearing before an Equal Employment Opportunity Commission Administrative Law Judge. *Id.* at Ex. 23. Administrative Judge Erin M. Stilp issued a Decision Without A Hearing (apparently the functional equivalent of summary judgment) on May 19, 2011, finding no evidence of discrimination. The Department of Justice adopted the Administrative Judge's conclusions in a Final Order on June 22, 2011. *Id.* at Ex. 24.

Plaintiff appealed the Department of Justice's findings to the United States Equal Employment Opportunity Commission, Office of Federal Operations. On July 19, 2013, the Office of Federal Operations affirmed the Department of Justice's Final Order and issued to plaintiff a right to sue notice. *Id.* at Ex. 25.

The present action was commenced on October 18, 2013. *See* Compl., ECF No. 1. Plaintiff asserted two counts in his complaint, both asserting discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* The first is based on plaintiff's temporary reassignment to a non-law-enforcement capacity and removal of his firearm. *Id.* at ¶ 44. The second is predicated on his permanent reassignment to a non-law-enforcement job. *Id.* at 45.

Defendant's answer was a general denial. *See* Answer, Feb. 11, 2014, ECF No. 9. Following discovery, on November 16, 2015, defendant moved for summary judgment. *See* Mot. for Summ. J., Nov. 16, 2015, ECF No. 49.

In its motion for summary judgment, defendant argues that plaintiff failed to exhaust his administrative remedies after his temporary reassignment as alleged in the first cause of action. *See* Mem. of L. in Supp. of Def.'s Mot. for Summ. J., Nov. 16, 2015, ECF No. 49-2 ("Def.'s Mem."), at 4-10. Plaintiff then withdrew this cause of action based on that temporary reassignment. *See* Pl.'s Mem. of L. in Opp'n to Def.'s Mot. for Summ. J., Feb. 20, 2016, ECF No. 59 ("Pl.'s Opp'n"), at 1 n.1.

The only remaining issue is whether defendant is entitled to summary judgment on plaintiff's claim that his permanent reassignment was discriminatory.

## IV. Law

### A. Summary Judgment

"Summary judgment is appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law." *Allstate Ins. Co. v. Sidakis*, No. 13–CV–7211, 2016 WL 556869, at *6 (E.D.N.Y. Feb. 10, 2016). "The relevant governing law in each case determines which facts are material; '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bank of Am., N.A. v. Fischer*, 927 F.Supp.2d 15, 25 (E.D.N.Y.2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in

favor of the non-movant, that no rational jury could find in the non-movant's favor." *Id.* (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir.1996)).

### B. Rehabilitation Act of 1973

Section 794 of Title 29 of the United States Code provides, in relevant part,

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted by any Executive agency ....

29 U.S.C. § 794.

■ The burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to Rehabilitation Act cases. *See Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir.2003). Under this framework, the plaintiff bears the initial burden of showing a *prima facie* case of discrimination. This requires demonstrating "(1) that [ ]he is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the anti-discrimination Acts; and (3) that [ ]he was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of h[is] disability.'" *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir.2015) (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004), opinion corrected, 511 F.3d 238 (2d Cir.2004)). Upon such a showing, the burden shifts to the defendant, who must offer legitimate, non-discriminatory reasons for its actions. In the final step, the burden shifts back to the plaintiff who must show that the proffered reasons are pretextual. *Kinsella*, 320 F.3d at 314.

### 1. Qualified Individual

■ To satisfy the first element of the *prima facie* case, a plaintiff must show that he is a "qualified individual with a disability." 29 U.S.C. § 794. For purposes of this statute, "'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To satisfy this requirement on summary judgment, a plaintiff must only show that he "possesses the basic skills necessary for performance of [the] job." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir.2015) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir.2001)). "In approaching this inquiry, '[a] court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.'" *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 100 (2d Cir.2003) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998)). Significant deference is especially appropriate in a situation involving a law enforcement agency, where a mistake may contribute to an erosion in the public's trust in government, cost the state a significant amount of money in *post hoc* litigation, and result in the loss of innocent life.

The relevant inquiry is not whether plaintiff had previously been qualified for the Special Agent position, but whether he is qualified now and will, with a substantial probability, present a risk in the future. *Shannon*, 332 F.3d at 100 ("the 'otherwise qualified' inquiry asks whether the plaintiff *will be* able to do the job") (emphasis added); *see also Brower v. Cont'l Airlines, Inc.*, 62 F.Supp.2d 896, 906 (E.D.N.Y.1999) ("a prior positive performance review will not establish that a later unsatisfactory

evaluation was a pretext for unlawful discrimination"). In a case such as the instant one, involving a law enforcement position that requires the carrying of a firearm, this inquiry "blends into," at least in part, the statutory "direct threat" defense. *Nelson v. City of N.Y.*, No. 11–CV–2732, 2013 WL 4437224, *9 (S.D.N.Y. Aug. 19, 2013). That defense permits an employer to impose a "qualification standard" which "may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b).

"Direct threat" is defined in the Code of Federal Regulations as "a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r).

> The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:
>
> (1) The duration of the risk;
>
> (2) *The nature and severity of the potential harm;*
>
> (3) The likelihood that the potential harm will occur; and
>
> (4) The imminence of the potential harm.

*Id.* (emphasis added); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 170 (2d Cir.2006) (listing factors).

■ The EEOC's interpretive guidance explains that "[a]n employer ... is not permitted to deny an employment opportunity to an individual with a disability mere-ly because of a slightly increased risk. The risk can only be considered when it poses a *significant risk, i.e., high probability, of substantial harm*; a speculative or remote risk is insufficient." 29 C.F.R. Pt. 1630, App. § 1630.2(r) (emphasis added). In performing this analysis, "the courts quite properly accord a significant measure of deference to a [law enforcement agency]'s determination that an officer poses too great a risk to [him]self and the public." *Nelson*, 2013 WL 4437224, at *11.

## 2. Individual with a disability

The term "individual with a disability" means an individual who has "a physical or mental impairment that substantially limits one or more major life activities" or who is "regarded as having such an impairment." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1). The "regarded as" clause requires a plaintiff to establish "that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The "regarded as" clause does not apply "to impairments that are transitory and minor." A "transitory impairment" is one "with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

"The definition of an impairment ... does not include common personality traits such as poor judgment or a quick temper where these are not symptoms of a mental or psychological disorder." 29 C.F.R. Pt. 1630, App'x; *see also Daley v. Koch*, 892 F.2d 212, 215 (2d Cir.1989) ("poor judgment, irresponsible behavior and poor impulse control do not amount to a mental condition that Congress intended to be considered an impairment which substantially limits a major life activity"); *Greenberg v. New York State*, 919 F.Supp. 637,

643 (E.D.N.Y.1996) (individual applying to be a correction officer with state department of correctional services could be rejected without violating anti-discrimination laws where psychologist concluded he had exercised poor judgment in some non-dispositive situations; "such personality character traits do not amount to a disability").

## V. Application of Law to Facts

### A. Plaintiff cannot make out a *prima facie* case

Defendant concedes that it is an employer subject to the Rehabilitation Act. Def.'s Mem. at 11. It correctly argues that plaintiff is unable to satisfy either the first or third requirements of the *prima facie* case.

#### 1. Plaintiff is not a "qualified individual"

To be qualified as a special agent, one must have the ability to use "tact and discretion in investigative assignments which are typically of a sensitive nature," and to carry a firearm. 56.1 Response at ¶¶ 5, 13.

Defendant takes the position that plaintiff is not qualified because he cannot be trusted to carry a firearm or engage in dangerous law enforcement activities, essential elements of the Special Agent job. Def.'s Mem. at 25-26; Reply Mem. of Law in further support of Def.'s Mot. for Summ. J., May 5, 2016, ECF No. 72 ("Reply Br."), at 12-13. Dr. Goldhagen's report, upon which Special Agent Turk relied in part in reassigning plaintiff, concluded that plaintiff's *personality characteristics make him unfit* to hold a law enforcement position, and "strongly" encourages continuing the restrictions on his firearms privileges. Cho Decl. at Ex. 8 (Jan. 16, 2015 Dep. of Ronald Turk), at 221:7-15, and Ex. 16 (Goldhagen Report) (emphasis added); *see also* Hr'g Tr., June 1, 2016, at 33:17-34:2.

Plaintiff argues that the record reflects that he possesses all of the basic qualifications for the Special Agent job. He points to his history of ATF promotions, performance reviews, salary increases, and firearms certifications. Opp'n Mem. at 20-22. In opposition to Dr. Goldhagen's report, plaintiff submitted his own psychiatric report which concluded that he "is competent and fit for duty, [and] who does not pose a danger to himself, others, or the public." Zakai Decl. at Ex. 38 (June 8, 2015 Report of Dr. Mark J. Mills), at 26-27. He further contends that he can only be found unqualified if it is determined, through the required procedure, that he poses a "direct threat." Hr'g Tr., June 1, 2016, at 21:14-22:5; Opp'n Br. at 24-28. Plaintiff argues that defendant cannot show that he posed a direct threat because he "never threatened anyone and was not terminated or disciplined" and "the FFD evaluation found no evidence that plaintiff bore suicidal or homicidal ideation or was otherwise violent or dangerous." Opp'n Br. at 27.

■ As a matter of law, Turk's permanent reassignment of plaintiff did not constitute illegal discrimination because plaintiff has reasonably been determined to be not "qualified" to be a special agent carrying a gun. While it is true that the question of qualification is often blended with the question of whether an individual poses a "direct threat," because an individual does not constitute a "direct threat" does not render that individual qualified. Here, in addition to the carrying of a firearm, the job of a special agent requires vital exercise of great discretion—a mistake under stressful circumstances may mean sudden death. 56.1 Response at ¶ 5.

The personality traits plaintiff demonstrated to his supervisors, and those reported in the FFD, indicate that a supervisor could find it probable that plaintiff

lacks the personality to react responsibly to sudden psychological stress or emotional trauma. Cho Decl. at Ex. 16.

Plaintiff's own medical expert states that plaintiff "may display an undiplomatic style of interacting with his supervisors in the workplace." Zakai Decl. at Ex. 38. At the critical point of a dangerous armed mission, smooth interaction with superiors and associates is essential.

### 2. Plaintiff is not an "individual with a disability"

▮ The parties agree plaintiff does not have an actual medical disability. Plaintiff argues, however, that he satisfies the requirement for someone who was "regarded as" having such a disability. Opp'n Br. at 7-17; Hr'g Tr., June 1, 2016, at 19:23-20:11. This position is not sustainable.

First, plaintiff is not correct that histrionic and narcissistic personality traits may meet the definition of "emotional or mental illness." *See* Opp'n Br. at 15-17 (citing EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities). The EEOC Enforcement Guidance upon which plaintiff relies does not support his position:

> Traits or behaviors are not, in themselves, mental impairments. For example, stress, in itself, is not automatically a mental impairment. Stress, however, may be shown to be related to a mental or physical impairment. Similarly, *traits like* irritability, chronic lateness, and *poor judgment are not, in themselves, mental impairments*, although they may be linked to mental impairments.

EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities, EEOC Notice No. 915.002 (Mar. 25, 1997), available at https://www.eeoc.gov/policy/docs/psych.html (emphasis added); *see also* Reply Br. at 5-6.

The personality traits plaintiff demonstrated could reasonably be construed by plaintiff's supervisors as reflecting only poor judgment. None of the medical professionals who evaluated him concluded that he suffered from anything different than poor judgment. Plaintiff's own medical expert concluded that he has "an undiplomatic style of interacting." Zakai Decl. at Ex. 38, at 26-27. Such a personality trait by itself does not qualify as a disability. *See* 29 C.F.R. Pt. 1630, App'x; *Daley*, 892 F.2d at 215; *Greenberg*, 919 F.Supp. at 643.

Second, the fact that Special Agent Turk expressed concern for plaintiff's mental and emotional health does not mean he regarded plaintiff as having a disability protected under the law. Special Agent Turk's permanent reassignment of plaintiff was supported by the medical diagnoses in the FFD that plaintiff did not have a mental disorder. *See, e.g.,* Cho Decl. at Ex. 16; *id.* at Ex. 8 at 216:6-9. Turk appropriately could conclude that plaintiff did not suffer from a disability. His concern for plaintiff's mental and emotional stability could then properly relate to the personality traits plaintiff exhibited and the FFD diagnosed.

Because plaintiff does not have a protected disability under the law, and because Special Agent Turk could reasonably concluded that plaintiff did not have such a disability when he permanently reassigned plaintiff, plaintiff does not qualify as an "individual with a disability" under the law.

### 3. Plaintiff was not discriminated against because of a disability

The third factor plaintiff must show to make a *prima facie* case is that he suffered an adverse employment action as a result of having or being perceived as having a disability.

Defendant concedes that, for the purpose of summary judgment, plaintiff's permanent reassignment may constitute an adverse employment action. *See* Def.'s Mem. at 12, 28. Defendant argues, however, that plaintiff cannot show any direct or inferential evidence of discrimination through examples of others who were similarly situated but treated differently. *Id.* at 28–29.

Plaintiff points to evidence showing that Special Agent in Charge Turk reassigned him specifically because he had concerns about plaintiff's probable future behavior, arguing this evidence establishes the requisite causal nexus. Opp'n Br. at 18. He is correct that the evidence shows he was reassigned because of concerns about his behavior. But, because his behavior was caused by personality traits which do not qualify as a disability under the law, adverse actions taken because of these traits do not constitute discrimination "by reason of . . . his disability." Plaintiff cannot satisfy the third requirement for a *prima facie* case.

*Nelson v. City of New York*, upon which plaintiff relied at oral argument, is distinguishable. In that case, the plaintiff had been diagnosed with actual mental disorders in the past. *Nelson*, 2013 WL 4437224, at *1–2 (diagnoses of chronic post-traumatic stress disorder, personality disorder NOS, major depressive disorder, anxiety disorder, and pain associated with medical condition and psychological factors). The history of the plaintiff's mental health diagnoses was used as a basis to deny her reinstatement to the police department. *Id.* at *7. Reliance on the history of these disorders, which do qualify as disabilities, to conclude that the plaintiff was still disabled, did satisfy the requirements of a "regarded as" claim. *Id.*

Here, in contrast, plaintiff was never diagnosed with a mental disorder that qualifies as a disability. He was denied a position because of unprotected personality traits which caused his supervisors to have concern for his ability to be an armed special agent. The *Nelson* Court's denial of summary judgment is unpersuasive.

## B. Defendant offered non-discriminatory reasons which are not pretextual

If plaintiff is assumed to have made out a *prima facie* case, the court finds that the second and third steps under the *McDonnell Douglas* framework are satisfied.

Turk had legitimate, non-discriminatory reasons for reassigning plaintiff. Def.'s Br. at 31–32. An official carrying a loaded weapon must be steady and reliable. The danger to the public and other federal officials—and the weapon carrier himself—requires extreme care in authorizing the carrying of a loaded weapon. Sudden emergencies require exquisite discipline and control to prevent panicking and firing of unnecessary lethal shots.

Plaintiff responds that the reasons defendant offered for the reassignment were merely pretextual to allow for intentional discrimination. Opp'n Br. at 50–67. He points to his history as a successful Special Agent and his certification as a firearms instructor. He also argues that the FFD evaluation recommended only temporarily disarming plaintiff pending further training to enhance his decision-making skills. *Id.*

The critical question is whether there is evidence showing that the decision to reassign was made because it was believed plaintiff had a protected mental disability. *There does not appear to be such evidence.* Rather, all of the evidence indicates that the decision to reassign was made because of plaintiff's personality characteristics, which do not rise to the *level of a clinical*

disorder, but were sufficient to cause serious concern amongst plaintiff's supervisors.

## VI. Conclusion

Documentary evidence in the form of medical reports and the unrebutted testimony of Special Agent in Charge Turk show that plaintiff was reasonably believed to have personality traits which rendered him unsuitable for a law enforcement gun-carrying position. These personality traits are not protected mental disabilities under the law in circumstances such as the present one.

As the various medical reports note, with counseling, plaintiff may learn to temper his problematic personality traits and regain his ability to hold a gun-carrying law enforcement position. A decision on the instant motion is a finding that Special Agent Turk did not violate anti-discrimination laws when he concluded that, in his reasonable professional judgment, at the time of the reassignment, plaintiff should not be carrying a gun.

The motion for summary judgment is granted. No costs or disbursements are awarded.

SO ORDERED.